# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

ANTHONY SALTALAMACCHIA,

               Plaintiff,

    v.

JOHN WENTZEL, et al.,

               Defendants

CIVIL ACTION NO. 3:14-CV-00868

(NEALON, J.)
(MEHALCHICK, M.J.)

## REPORT AND RECOMMENDATION

Plaintiff Anthony Saltalamacchia, proceeding *pro* se, filed this civil rights action pursuant to 42 U.S.C. § 1983. (Doc. 1). Plaintiff is an inmate currently incarcerated at the State Correctional Institution at Pine Grove located in Indiana, Pennsylvania. The allegations that give rise to this complaint occurred while Plaintiff was incarcerated at the State Correctional Institution at Rockview ("SCI-Rockview") located in Bellefonte, Pennsylvania. Plaintiff asserts federal civil rights claims and state law claims against forty-eight Defendants, all of whom appear to be connected with the Pennsylvania Department of Corrections. On May 6, 2014, Plaintiff filed this complaint (Doc. 1) and a motion for leave to proceed *in forma pauperis*. (Doc. 2). It is recommended that the Court grant Plaintiff's motion for leave to proceed *in forma pauperis*. (Doc. 2).

## I.   SECTION 1915A STANDARD

Under 28 U.S.C. § 1915A, the Court is obligated, prior to service of process, to screen a civil complaint in which a prisoner is seeking redress from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a); *James v. Pa. Dep't of Corr.*, 230 Fed. Appx. 195, 197 (3d Cir. 2007). The Court must dismiss the complaint if it fails to state a claim

upon which relief can be granted. 28 U.S.C. § 1915A(b)(1); *Mitchell v. Dodrill*, 696 F. Supp. 2d 454, 471 (M.D. Pa. 2010). The Court has a similar obligation with respect to actions brought *in forma pauperis* and actions concerning prison conditions. *See* 28 U.S.C. § 1915(e)(2)(B)(ii); 42 U.S.C. § 1997e(c)(1). *See generally Banks v. County of Allegheny*, 568 F. Supp. 2d 579, 587–89 (W.D. Pa. 2008) (summarizing prisoner litigation screening procedures and standards). In performing this mandatory screening function, a district court applies the same standard applied to motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Mitchell*, 696 F. Supp. 2d at 471; *Banks*, 568 F. Supp. 2d at 588.

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The United States Court of Appeals for the Third Circuit has noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), continuing with our opinion in *Phillips* [*v. County of Allegheny*, 515 F.3d 224 (3d Cir. 2008)] and culminating recently with the Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 209–10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). A court "need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). Additionally, a

court need not assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983). In order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). When ruling on a motion to dismiss, a trial court must assess whether a complaint states facts upon which relief can be granted, and should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

In deciding a Rule 12(b)(6) motion, the court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Additionally, a document filed *pro se* is "to be liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). The Third Circuit has instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

A Rule 12(b)(1) motion may be treated as either a facial or factual challenge to the

court's subject matter jurisdiction. *Gould Electronics Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000). In a factual attack under Rule 12(b)(1), the court may consider and weigh evidence outside the pleadings to determine if it has jurisdiction. *Gould Electronics Inc.*, 220 F.3d at 178. This Rule 12(b)(1) factual evaluation may occur at any stage of the proceedings, from the time the answer has been served until after the trial has been completed. *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891–92 (3d Cir. 1977). "When a motion under Rule 12 is based on more than one ground, the court should consider the 12(b)(1) challenge first because if it must dismiss the complaint for lack of subject matter jurisdiction, all other defenses and objections become moot." *In re Corestates Trust Fee Litig.*, 837 F.Supp. 104, 105 (E.D. Pa. 1993), *aff'd* 39 F.3d 61 (3d Cir. 1994).

## II. BACKGROUND

Plaintiff was incarcerated at SCI - Rockview from March 2, 2012 to January 15, 2013. (Doc. 1, ¶ 6). On March 8, 2012, Plaintiff was classified for general population and assigned to cell 4010 of A unit. (Doc. 1, ¶ 9). Plaintiff was housed in A unit between March 8, 2012 and July 22, 2012. (Doc. 1, ¶ 13). According to Plaintiff, inmate Hall, another inmate in A unit, robbed several inmate cells. (Doc. 1, ¶¶ 29-31). Plaintiff states that Hall, and two other inmates, Joslin and Comisac, conspired to rob plaintiff. (Doc. 1, ¶ 35). Plaintiff states that he told Walker, Granlund, Eaton, and Vance of these threats. (Doc. 1, ¶¶ 37-38). Plaintiff states that on July 22, 2012, CO A unlocked Plaintiff's cell door and let inmate Hall, Joslin, and Comsiac into his cell. Plaintiff states that Hall then beat Plaintiff with a combination lock. (Doc. 1, ¶¶ 39-41).

About an hour after the incident, Kearns arrived and transported Plaintiff to Medical. (Doc. 1, ¶ 49). Plaintiff states that Brenda and Koltay did not document his injuries properly. (Doc. 1, ¶ 51). Plaintiff was then processed into the AC, "protective custody unit," by Ranio

and Bruno. Plaintiff refused a cell mate and was issued a misconduct report. (Doc. 1, ¶¶ 58-59). On August 7, 2012, Plaintiff was released from "the hole." (Doc. 1, ¶ 68).

On August 24, 2012, Plaintiff was called to the SCI - Rockview security office. (Doc. 1, ¶ 88). Plaintiff was informed that his August 3, 2012, letter to the Office of Special Investigations and Intelligence ("OSII") was forward to several Defendants. (Doc. 1, ¶ 91). Plaintiff was then placed into administrative segregation, the "AC unit," on August 24, 2012, and remained there until January 15, 2013. (Doc. 1, ¶ 95).

While in the AC unit, Plaintiff alleges a series of events that violate his constitutional rights. On November 4, 2012, Plaintiff states that he was attacked by Vangorder. (Doc. 1, ¶ 135). Plaintiff was then transported to the medical housing unit ("TBO"), (Doc. 1, ¶ 157), and remained there until December 3, 2012. (Doc. 1, ¶ 162). While there, Plaintiff states that Vangorder and Taylor verbally harassed him. On December 3, 2012, Plaintiff returned to the AC unit from the TBO. On December 5, 2012, Plaintiff alleges that Vangorder told Plaintiff's cellmate that Plaintiff was a snitch, and as a result Plaintiff's cellmate assaulted him. (Doc. 1, ¶¶ 169-170).

Plaintiff brings claims against forty-eight (48) Defendants regarding the Pennsylvania Department of Corrections ("DOC") in both their official and individual capacities. (Doc. 1, ¶ 6). The named Defendants are as follows: John Wentzel, Secretary of the DOC; Marirosa Lamas, Superintendent of SCI – Rockview; Dorina Varner, Chief Grievance Coordinator of the DOC; Jeffrey Horton, Deputy Superintendent of SCI-Rockview; Jeffrey Rackovan, Grievance Coordinator of SCI – Rockview; James Barnacle, Director of the Office of Special Intelligence and Investigations; John Doe Major A; Mr. Granlund, Unit Manager of A unit; Mr. Pasquale, Unit Manager of the AC housing unit; William Williams, clinical health care administrator of

SCI – Rockview; Dr. Burke, mental health care administrator of SCI – Rockview; Nurse Brenda; Julie Koltay, Physician Assistant at SCI – Rockview; Jane Doe Nurse A; Major Robinson; Captain Eaton; Captain Dale; Lieutenant Vance; Lieutenant Foster; Lieutenant Kearns; Lieutenant Kellichner; Lieutenant Campbell; Lieutenant Hardy; Sergeant Greene; Sergeant Cutler; Sergeant Jack Vangorder; Sergeant Phillips; Sergeant Walker; Sergeant Kertis; Correctional Officer Frank(A); Correctional Officer Frank(B); John Doe CO A; John Doe CO B; John Doe CO C; Correctional Officer Taylor; Correctional Officer Bruno; Correctional Officer Crawford; Correctional Officer Martin; Correctional Officer Ranio; Correctional Officer Lee; Correctional Officer Hannon; Correctional Officer Alexander; John Does A unit staff; John Does AC unit staff; John Doe Maintenance Supervisor; SCI – Rockview; Pennsylvania Department of Corrections; and Office of Special Intelligence and Investigations.

**III. DISCUSSION**

> **A. CLAIMS AGAINST THE DEPARTMENT OF CORRECTIONS, THE OFFICE OF SPECIAL INTELLIGENCE AND INVESTIGATIONS, AND SCI-ROCKVIEW**

State agencies are not "persons" subject to liability in § 1983 actions brought in federal court. *Will v. Michigan Dept. of State Police*, 491 U.S. 58 (1989). A § 1983 suit against a state official's office is "no different from a suit against the State itself." *Will,* 491 U.S. at 71. "*Will* establishes that the State and arms of the State, which have traditionally enjoyed Eleventh Amendment immunity, are not subject to suit under § 1983 in either federal or state court." *Howlett v. Rose*, 496 U.S. 356, 365 (1990). *See also Martz v. SCI-Coal Twp. Therapeutic Cmty.*, No. 11-830, 2012 WL 406609 (M.D. Pa. Feb. 8, 2012) (dismissing the Pennsylvania Department of Corrections as "clearly not properly named defendant[] in a § 1983 action").

Because a state agency "is not a 'person' within the meaning of Section 1983," *Thompson v. Burke*, 556 F.2d 231, 232 (3d Cir. 1977), a prison or correctional facility is not a person within

the meaning of § 1983. *See Fischer v. Cahill*, 474 F.2d 991, 992 (3d Cir. 1973); *Philogene v. Adams County Prison*, Civ. No. 97–0043, slip op. at p. 4 (M.D. Pa. Jan. 30, 1997). Pursuant to the above standards, SCI – Rockview and the Office of Special Intelligence and Investigations[1] are not persons and may not be sued under § 1983. *See Thompkins v. Doe*, No. 99–3941, slip op. at 3 (3d Cir. March 16, 2000); *Martz,* 2012 WL 406609. As such, it is recommended that the Pennsylvania Department of Corrections, the Office of Special Intelligence and Investigations, and SCI – Rockview be dismissed with prejudice from this action pursuant to Fed. R. Civ. P. 12(b)(1).

B. OFFICIAL CAPACITY CLAIMS

Plaintiff alleges claims against all of the defendants in both their individual and official capacities. (Doc. 1, ¶ 6). The Eleventh Amendment prohibits suits brought in federal court against a state or where the state or its agency is the real party in interest, and in which the relief sought has an impact directly on the state itself. *Pennhurst State Schools and Hospital v. Halderman*, 465 U.S. 89 (1984); *Allegheny County Sanitary Authority v. United States Environmental Protection Agency*, 732 F.2d 1167 (3d Cir. 1984). To the extent that Plaintiff seeks monetary damages, the individual defendants are immune under the Eleventh Amendment in their official capacities. *See Will*, 491 U.S. 58, 71; *Howlett*, 496 U.S. 356, 365. Accordingly, Plaintiff's claims against the individual Defendants, as named in their official capacities seeking monetary relief, are barred by the Eleventh Amendment and subject to dismissal. Because this Court lacks subject matter jurisdiction over Plaintiff's claims against the individual defendants in their official capacities

---

[1] The Office of Special Intelligence and Investigations is an office within the Department of Corrections. http://www.portal.state.pa.us/portal/server.pt/community/hide_opr/14514.

under the Eleventh Amendment, it is recommended that the Court dismiss these claims with prejudice pursuant to Fed. R. Civ. P. 12(b)(1).

    C. PERSONAL INVOLVEMENT

    To state a viable § 1983 claim, a plaintiff must plead two essential elements: (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 580–81 (3d Cir. 2003); *Tabb v. Hannah*, No. 10-1122, 2012 WL 3113856, at *9 (M.D. Pa. July 30, 2012).

    In *Iqbal, supra*, 556 U.S. at 676, the Supreme Court observed that "[b]ecause vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." The Court further emphasized that in a § 1983 suit, "each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677. A "defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of *respondeat superior*." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998)). Individual liability can only be imposed if the state actor played an "affirmative part" in the alleged misconduct. *Chinchello v. Fenton*, 805 F.2d 126, 133 (3d Cir. 1986). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Argueta v. U.S. ICE*, 643 F.3d 60, 72 (3d Cir. 2011) (quoting *Rode*, 845 F.2d at 1207).

    As an initial matter, Plaintiff names in the caption of the complaint Defendants Hardy, Kearns, Ranio, Campbell, Greene, Cutler, Phillips, Frank (A), CO C, Lee, Hannon, and

Alexander. Although Plaintiff mentions some of these defendants in his complaint, he fails to allege any facts that these defendants were personally involved in any of the alleged claims. As there are no claims alleged against these defendants, there are consequently no allegations that these defendants were personally involved in any of the alleged claims and the Court cannot assess any potential claims against these defendants. As such, it is recommended that these defendants be dismissed without prejudice. To the extent that Plaintiff may allege that these individuals were personally involved in any of his claims, it is further recommended that Plaintiff be granted leave to amend his claims against these defendants.

   D.  SUPERVISORY LIABILITY CLAIMS

   An allegation seeking to impose liability on a defendant based on supervisory status, without more, will not subject the official to § 1983 liability. *Padilla v. Beard*, 2006 WL 1410079, at *3 (M.D. Pa. May 18, 2006); *see also Rode*, 845 F.2d 1195, 1207; *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985) (per curiam) (a mere linkage in the prison chain of command is not sufficient to demonstrate personal involvement for purposes of section 1983); *Rizzo v. Goode*, 423 U.S. 362 (1976) (permitting supervisory liability where a defendant, after being informed of the violation through the filing of grievances, reports or appeals, failed to take action to remedy the alleged wrong is not enough to show that the defendant has the necessary personal involvement). "It is well-established that an allegation that an official ignored a prisoner's letter of protest and request for an investigation of allegations made therein is insufficient to hold that official liable for the alleged violations." *Padilla*, 2006 WL 1410079, at *3 (citing *Greenwaldt v. Coughlin*, 1995 WL 232736, at *4 (S.D.N.Y. Apr.1 9, 1995) (citations omitted)).

   Moreover, there is no constitutional right to a grievance procedure. *See Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 137–38 (1977); *Padilla*, 2006 WL 1410079, at

*6. Even if the state provides for a grievance procedure, as Pennsylvania does, violations of those procedures do not amount to a § 1983 cause of action. *Hoover v. Watson*, 886 F. Supp. 410, 418–19 (D. Del. 1995), *aff'd* 74 F.3d 1226 (3d Cir. 1995). An allegation that an official ignored an inmate's request for an investigation or that the official did not properly investigate is insufficient to hold that official liable for the alleged violations. *Padilla*, 2006 WL 1410079, at *6. Generally, an allegation of failure to investigate an event after the fact, without another recognizable constitutional right, is not sufficient to sustain a § 1983 claim. *Heim v. York Cnty. Prison*, 2013 WL 1414638, at *6 (M.D. Pa. Apr. 8, 2013) (citing *Graw v. Fantasky*, 68 Fed. Appx. 378, 383 (3d Cir. 2003)); *see also Mincy v. Chmielsewski*, 508 Fed. Appx. 99, 104 (3d Cir. 2013) (An "officer's review of, or failure to investigate, an inmate's grievances generally does not satisfy the requisite personal involvement."); *Pressley v. Beard*, 266 Fed. Appx. 216, 218 (3d Cir. 2008) ("The District Court properly dismissed these [supervisory] defendants and any additional defendants who were sued based on their failure to take corrective action when grievances or investigations were referred to them.").

In this case, Plaintiff brings claims against several defendants based on their supervisory status. Specifically, Plaintiff brings claims against Defendants Wentzel, Lamas, Horton, Major A, Granlund, Robinson, Eaton, Vance, Foster, Walker, A unit staff, the Maintenance Supervisor, Varner, Rackovan, Kellichner, and CO A. (Doc. 1, ¶¶ 14, 198). Plaintiff states that these defendants had "direct knowledge of these unconstitutional conditions. Their knowledge comes from working in the unit, being in the unit, and from complaints . . . , grievances, misconduct's [*sic*] appeals, and prison records, yet they took no steps whatsoever to abate these conditions." (Doc. 1, ¶ 14). Plaintiff further states that "Supervisory def's . . . refused to review and respond to inmate and staff complaints despite their knowledge of a breakdown in

services." (Doc. 1, ¶ 16). As such, to the extent Plaintiff seeks to impose liability on any of the defendants based on their supervisory status, their failure to investigate other defendants, or their failure to investigate the allegations in Plaintiff's grievances, it is recommended that these claims be dismissed with prejudice.

    E. Verbal Harassment

Throughout the complaint, Plaintiff alleges several incidents of verbal harassment. Specifically, with respect to Granlund, the A unit manager, Plaintiff alleges that Granlund told him to "keep his mouth shut" and threatened Plaintiff. (Doc. 1, ¶ 26). Plaintiff further alleges that on November 14, 2012, Plaintiff was harassed by Vangorder and Taylor while he was in the medical housing unit. (Doc. 1, ¶ 163). Plaintiff reported this verbal harassment to Lamas, Horton, Robinson, Eaton, and Pasquale, but no action was taken. (Doc. 1, ¶ 164). Plaintiff also alleges that Bruno verbally abused and humiliated him. (Doc. 1, ¶ 224).

Verbal harassment or threats, without some reinforcing act accompanying them, do not state a constitutional claim. *Robinson v. Taylor*, 204 Fed. Appx. 155, 156 (3d Cir. 2006); *Brown v. James*, 2009 WL 790124, at *6–7 (M.D. Pa. Mar. 18, 2009). *See also Murray v. Woodburn*, 809 F.Supp. 383, 384 (E.D. Pa. 1993) ("Mean harassment ... is insufficient to state a constitutional deprivation."). As such, to the extent Plaintiff seeks to state a constitutional claim against Granlund, Vangorder, Taylor, or Bruno for verbal harassment, it is recommended that these claims be dismissed with prejudice.

F. Eighth Amendment Excessive Force Claims

Plaintiff alleges excessive force claims against several defendants.[2] Plaintiff alleges the following excessive force claims: Plaintiff states that CO A's participation in the July 22, 2012, incident makes him directly liable for the use of excessive force upon Plaintiff (Doc. 1, ¶ 207); and Plaintiff alleges an excessive force claim against Vangorder, Martin, and Crawford for the November 4, 2012, incident (Doc. 1, ¶¶ 250, 262).[3]

When prison officials are accused of using excessive force in violation of the Eighth Amendment the inquiry "is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). There are several factual considerations that a court must examine in determining whether a correctional officer has used excessive force in violation of the Eighth Amendment, including: "(1) 'the need for the application of force'; (2) 'the relationship between the need and the amount of force that was used'; (3) 'the extent of injury inflicted'; (4) 'the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them'; and (5) 'any efforts made to temper the severity of a forceful response.' " *Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000) (quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986)).

---

[2] Although Plaintiff alleges excessive force claims against defendants under the Fourth Amendment, in liberally construing the complaint, the Court finds that these claims are properly analyzed as Eighth Amendment excessive force claims.

[3] Plaintiff also states that Defendant CO B's theft of plaintiff's property violated his Fourth Amendment right. (Doc. 1, ¶ 270).To the extent Plaintiff brings a Fourth Amendment claim against Defendant CO B for deprivation of personal property, this is discussed as a Fourteenth Amendment Due Process claim, *infra*.

Not "every malevolent touch by a prison guard" violates the Eighth Amendment. *Hudson*, 503 U.S. at 9. "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Hudson*, 503 U.S. at 9 (quoting *Whitley*, 475 U.S. at 327). Thus, "[a]n inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim." *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010). The extent of injury suffered is a consideration that may be relevant to determining if the force could have plausibly been thought necessary. *Wilkins*, 559 U.S. at 37. "The extent of injury may also provide some indication of the amount of force applied." *Wilkins*, 559 U.S. at 37. But to establish an Eighth Amendment excessive force claim, an inmate does not need to show that he suffered a significant, or even a more than *de minimis*, injury. *Wilkins*, 559 U.S. at 37. Rather, the central issue is the force used by the officer, not the injury caused by the officer. *Flood v. Schaefer*, 439 Fed. Appx. 179, 182 (3d Cir. 2011); *see also Sosa v. Grillo*, No. 12-1724, 2014 WL 359673, at *12 (M.D. Pa. Feb. 3, 2014).

In this case, the Court finds that Plaintiff has stated a claim for excessive force against Vangorder, Crawford, and Martin for their role in the November 4, 2012, incident. Plaintiff alleges that Crawford and Martin forcibly held Plaintiff down while Vangorder punched him. (Doc. 1, ¶¶ 134-135). With regard to CO A, Plaintiff does not allege that CO A participated in the alleged injury caused by the three inmates that occurred on July 22, 2012.[4] As such, Plaintiff

---

[4] In liberally construing the complaint, the Court will analyze Plaintiff's claim against CO A under an Eighth Amendment failure to intervene claim, rather than an Eighth Amendment excessive force claim. *See Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002) (holding that a corrections officer's failure to intervene in a beating can be the basis of liability for an Eighth Amendment violation under § 1983 if the corrections officer had a reasonable opportunity to intervene and simply refused to do so).

13

has failed to state a claim for excessive force against CO A and it is recommended that Plaintiff's excessive force claim against CO A be dismissed with prejudice.

G. EIGHTH AMENDMENT FAILURE TO PROTECT/INTERVENE

The Eighth Amendment's prohibition against the infliction of cruel and unusual punishment has been interpreted to impose upon prison officials a duty to take reasonable measures "to protect prisoners from violence at the hands of other prisoners." *Hamilton v. Leavy*, 117 F.3d 742, 746 (3d Cir. 1997) (quoting *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (internal citations omitted)). However, it is not "every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for a victim's safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Mere negligent conduct that leads to serious injury of a prisoner by a prisoner does not expose a prison official to liability under § 1983. *Davidson v. Cannon*, 474 U.S. 344, 347–48 (1986). To establish a failure to protect claim, an inmate must show that "(1) he was incarcerated under conditions posing a substantial risk of serious harm, (2) the official was deliberately indifferent to that substantial risk to his health and safety, and (3) the official's deliberate indifference caused him harm." *Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2012).

In determining whether a defendant was deliberately indifferent, the court must "focus [on] what a defendant's mental attitude actually was (or is), rather than what it should have been (or should be)." *Hamilton*, 117 F.3d at 747. "A prison official's knowledge of a substantial risk is a question of fact and can, of course, be proved by circumstantial evidence." *Hamilton*, 117 F.3d at 747. Defendants must have "'knowingly and unreasonably disregarded an objectively intolerable risk of harm.'" *Beers–Capitol v. Whetzel*, 256 F.3d 120, 132 (3d Cir. 2001). It is not enough to assert that a defendant should have recognized the risk; the evidence must be

sufficient to support the inference that "the defendant must have recognized the excessive risk and ignored it." *Beers-Capitol*, 256 F.3d at 138. The same deliberate indifference standard applies to a failure to intervene claim. An officer may be liable under the Eighth Amendment if he were aware of an inmate attack, had a realistic and reasonable opportunity to intervene, and refused to do so. *Bistrian*, 696 F.3d at 371.

The Third Circuit has held that a corrections officer cannot escape liability by relying upon his inferior or non-supervisory rank vis-a-vis the other officers. *Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002). In *Smith*, the Third Circuit iterated that:

> Courts have held that a police officer has a duty to take reasonable steps to protect a victim from another officer's use of excessive force, even if the excessive force is employed by a superior. "If a police officer, whether supervisory or not, fails or refuses to intervene when a constitutional violation such as an unprovoked beating takes place in his presence, the officer is directly liable under Section 1983." *Byrd v. Clark*, 783 F.2d 1002, 1007 (11th Cir. 1986); *accord Putman v. Gerloff*, 639 F.2d 415, 423 (8th Cir. 1981); *Byrd v. Brishke*, 466 F.2d 6, 11 (7th Cir. 1972). However, an officer is only liable if there is a realistic and reasonable opportunity to intervene. *See Clark*, 783 F.2d at 1007 (instructing the district court upon remand to determine whether the officer was in a position to intervene); *Brishke*, 466 F.2d at 11 (liability for failure to intervene exists only if the beating occurred in the officer's presence or was otherwise within his knowledge); *Putman*, 639 F.2d at 423–24 (liability exists only if the non-intervening officer saw the beating or had time to reach the offending officer).

> *Smith v. Mensinger*, 293 F.3d 641, 650-51 (3d Cir. 2002) (noting Eighth Amendment inquiry for police officers is the same for corrections officers).

In this case, Plaintiff alleges that Wentzel, Lamas, Horton, Varner, Rackovan, Barnacle, Major A, Granlund, Robinson, Eaton, Vance, Foster, Kellichner, Walker, CO A, and A unit staff failed to protect him from other inmates despite their direct knowledge of the risk of that harm. (Doc. 1, ¶¶ 81, 202). Specifically, Plaintiff alleges that these defendants were deliberately indifferent regarding the July 22, 2012, incident with inmate Hall. (Doc. 1, ¶¶ 27, 203). With regard to the November 4, 2012, incident involving Vangorder, Plaintiff asserts that Vangorder,

Wentzel, Lamas, Horton, Barnacle, Major A, Pasquale, Robinson, Eaton, Vance, Rackovan, Dale, Crawford, Martin, Foster, Kellichner, and Nurse A were deliberately indifferent to Plaintiff's safety in violation of his Eighth Amendment rights, failed to protect him against Vangorder, and/or failed to investigate the incident surrounding Vangorder. (Doc. 1, ¶¶ 244, 245, 247, 152). With regard to Defendant Bruno's conduct toward Plaintiff, Plaintiff states that Wentzel, Lamas, Horton, Rackovan, Varner, Barnacle, Major A, Pasquale, Robinson, Eaton, Vance, and Foster were deliberately indifferent to Plaintiff's safety as a result of Defendant Bruno's conduct. (Doc. 1, ¶ 221).

In this case, Plaintiff has not alleged any facts that would suggest that Wentzel, Lamas, Horton, Varner, Rackovan, Barnacle, Major A, Granlund, Robinson, Eaton, Vance, Foster, Kellichner, Walker, CO A, A unit staff, Pasquale, Dale, or Nurse A knew of and unreasonably disregarded an unreasonable risk of harm to Plaintiff. Rather, Plaintiff only alleges the broad proposition that these defendants should have protected him. This is not sufficient to state an Eighth Amendment failure to protect or intervene claim. As such, it is recommended that these defendants be dismissed without prejudice for Plaintiff's failure to state a claim against them. To the extent Plaintiff can allege facts to suggest that any of the defendants had actual knowledge of a risk of harm to Plaintiff's health and safety and unreasonably disregarded that risk, it is recommended that the Court grant Plaintiff leave to amend this claim.

With respect to CO A,[5] Plaintiff alleges that he was present when Plaintiff was assaulted by three inmates. Plaintiff alleges that CO A had actual knowledge of the risk to Plaintiff's safety and alleges that CO A unlocked Plaintiff's cell, allowed the inmates to enter Plaintiff's

---

[5] The Court notes that claims against Vangorder, Crawford, and Martin for their involvement in the alleged altercation are addressed as Eighth Amendment excessive force claims, *supra*.

cell, and observed the altercation. As such, Plaintiff has alleged facts sufficient to state an Eighth Amendment failure to intervene claim against CO A.

   H.   EIGHTH AMENDMENT DELIBERATE INDIFFERENCE TO A SERIOUS MEDICAL
        NEED CLAIM

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain," which includes "deliberate indifference to serious medical needs of prisoners." *Dennis v. Jensen*, No. 10–1486, 2013 WL 2245144, at *3 (M.D. Pa. May 20, 2013) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976)). Such a claim requires that a plaintiff allege "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." *Natale*, 318 F.3d at 582. "Mere medical malpractice, negligence, and courses of treatment inconsistent with the desires of the prisoner ... do not constitute deliberate indifference to serious medical needs." *Lopez v. Corr. Med. Servs., Inc.*, 499 Fed. Appx. 142, 146 (3d Cir. 2012) (citing *Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004)). Instead, it must be shown that an official knowingly disregarded an excessive medical risk: "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. "Deliberate indifference may be manifested by an intentional refusal to provide medical care, delayed medical treatment for non-medical reasons, a denial of prescribed medical treatment, or a denial of reasonable requests for treatment that results in suffering or risk of injury." *Beckett v. Department of Corr.*, No. 10–0050, 2011 WL 4830787, at *11 (M.D. Pa. Oct. 12, 2011).

Plaintiff alleges Eighth Amendment deliberate indifference to serious medical needs claims against Williams, Brenda, and Koltay (Doc. 1, ¶ 204) regarding the July 22, 2012, incident, and a claim against Defendant Brenda (Doc. 1, ¶ 260) for incidents arising out of Plaintiff's time in the AC unit. Plaintiff states that about an hour after the July 22, 2012,

incident, Kearns arrived and transported Plaintiff to Medical. (Doc. 1, ¶ 49). Plaintiff states that Brenda and Koltay did not document his injuries properly. (Doc. 1, ¶ 51). Plaintiff asserts that Williams, Brenda, and Koltay were deliberately indifferent to Plaintiff's serious medical needs and deliberately indifferent to the July 22 incident. (Doc. 1, ¶¶ 204, 208). Plaintiff provides no factual allegations that would support that these defendants knew of and disregarded a serious medical need. Rather, Plaintiff provides only a conclusory statement that defendants were deliberately indifferent. Plaintiff further states that Williams did not respond to Plaintiff's grievance of August 5, 2012, concerning his vision, until August 23, 2012. (Doc. 1, ¶ 66).

To the extent that Plaintiff brings a claim against Williams for failing to respond to a grievance, it is recommended that this claim be dismissed with prejudice. As noted above, a claim against a defendant based on his supervisory status fails to allege the requisite personal involvement. To the extent that Plaintiff brings claims against Brenda and Koltay for their failure to properly document and treat Plaintiff's wounds, Plaintiff has failed to allege any facts that Brenda or Koltay knowingly disregarded an excessive medical risk, and thus it is recommended that Plaintiff's claims against Koltay and Brenda be dismissed without prejudice for failure to state a claim. It is further recommended that Plaintiff be granted leave to amend this claim against Koltay and Brenda.

I.   EIGHTH AMENDMENT CONDITIONS OF CONFINEMENT

"The Eighth Amendment prohibition against cruel and unusual punishment demands that prison officials do not house inmates under conditions that deprive them of one or more basic human needs, such as the basic human need for reasonable safety, adequate physical space, and the need for some degree of ventilation and fresh air." *Caldwell v. Luzerne County Corrections Facility Management Employees*, 732 F.Supp.2d 458, 470 (M.D. Pa. 2010) (citing

*Helling v. McKinney,* 509 U.S. 25, 32 (1993)). However, the Eighth Amendment does not mandate that prisons be free of discomfort. *Farmer*, 511 U.S. at 832 (citing *Rhodes v. Chapman,* 452 U.S. 337, 349 (1981)). "No static test determines whether conditions of confinement are 'cruel and unusual.' These terms must 'draw [their] meaning from the evolving standards of decency that mark the progress of a maturing society.'" *Tillery v. Owens,* 719 F. Supp. 1256, 1261 (W.D. Pa. 1989) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981)).

To establish an Eighth Amendment conditions of confinement claim, a plaintiff must show that he was deprived of "the minimal civilized measure of life's necessities." *Young v. Quinlan*, 960 F.2d 351, 359 (3d Cir. 1992). The plaintiff must prove that (1) the deprivation was sufficiently serious; and (2) the prison official acted with deliberate indifference in subjecting him to that deprivation. *Griffin v. Vaughn,* 112 F.3d 703, 709 (3d. Cir. 1997). This requirement of actual knowledge means that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Beers-Capitol*, 256 F.3d at 131 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

Plaintiff raises Eighth Amendment conditions of confinement claims for his time in A unit (Doc. 1, ¶ 198), the AC unit (Doc. 1, ¶ 211), and the TBO. (Doc. 1, ¶ 253). Plaintiff raises conditions of confinement claims based on the following alleged conditions of A unit: (1) tobacco smoke; (2) poor ventilation; (3) sanitation; and (4) safety/security. (Doc. 1, ¶ 15). Plaintiff brings claims against Wentzel, Lamas, Horton, Major A, Granlund, Robinson, Eaton, Vance, Foster, Walker, A unit staff, and the Maintenance Supervisor for their "deliberate indifference" to the unconstitutional conditions of the unit. (Doc. 1, ¶ 198). Plaintiff alleges that

the prison conditions harmed his health and caused him physical pain, constituting cruel and unusual punishment. (Doc. 1, ¶ 198).

Plaintiff further alleges that he was subjected to unconstitutional conditions similar to A unit while he was confined in the AC unit. (Doc. 1, ¶¶ 99-100). Specifically, he states that he was denied out-of-cell exercise and recreation; there was a presence of tobacco; there was a presence of human waste; the unit had no audio or visual surveillance; the triple lock on his cell created a fire hazard; he was exposed to constant illumination; the unit was filled with noise and screaming at all hours; and Plaintiff was threatened daily. (Doc. 1, ¶ 101). Plaintiff brings these conditions of confinement claims related to the AC unit against Wentzel, Lamas, Horton, Major A, Pasquale, Robinson, Eaton, Vance, Foster, the Maintenance Supervisor, and the AC unit staff. (Doc. 1, ¶ 211). Lastly, Plaintiff asserts that he was subjected to poor conditions in the TBO cell and alleges claims against Burke, Frank (B), and Horton for their deliberate indifference to those conditions. (Doc. 1, ¶¶ 160, 253).

There are no allegations in the complaint that any of the individual defendants knew of and disregarded a substantial risk of serious harm to Plaintiff's health or that their actions subjected Plaintiff to deprivations that were sufficiently serious. As noted above, a claim based on supervisory liability, without any alleged personal involvement, is not sufficient for § 1983 liability. To the extent Plaintiff seeks to impose liability on defendants for their supervisory roles of his conditions of confinements, it has already been recommended that those claims be dismissed with prejudice. It is now recommended that Plaintiff's conditions of confinement claims be dismissed without prejudice for failure to state a claim. It is further recommended that Plaintiff be granted leave to amend his conditions of confinement claims to the extent he can

allege that any of the individual defendants had personal involvement in the conditions of confinement claims.

J.   EIGHTH AMENDMENT CLAIM AGAINST BRUNO

Plaintiff asserts a false light invasion of privacy claim against Bruno. (Doc. 1, ¶ 234).[6] Plaintiff alleges that Bruno told other inmates that he was a rat, which "caused inmates to call [Plaintiff] a rat and a snitch and to threaten him with physical harm." (Doc. 1, ¶ 114). Plaintiff further alleges that Bruno told Vangorder and seven or eight inmates that Plaintiff was a "baby raper" and this caused inmates to threaten to harm and kill Plaintiff. (Doc. 1, ¶ 118).

In liberally construing the complaint, the Court finds that the facts support an Eighth Amendment claim against Bruno. "[B]eing branded a 'snitch' may have serious consequences to an inmate's health." *Tillery v. Owens*, 719 F.Supp. 1256, 1276–77 (W.D. Pa.1989). Plaintiff alleges that Bruno communicated to other inmates that he was a "rat" or "snitch," thus placing him at risk of assault. As such, these claims are sufficient at the pleading stage to establish a cause of action. *See Tabb v. Hannah*, No. 10-1122, 2012 WL 3113856 (M.D. Pa. July 30, 2012) (allegations that correctional officer told other inmates that plaintiff was a snitch sufficient to survive motion to dismiss).

K.   EQUAL PROTECTION CLAIM

The Equal Protection Clause of the Fourteenth Amendment directs that all individuals similarly situated be treated alike. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Two theories exist upon which a plaintiff may assert an equal protection claim. *Conklin v. Warrington Twp.*, No. 06-2245, 2008 WL 2704629, at *11 (M.D. Pa. July 7, 2008). The traditional theory protects a plaintiff from discriminatory treatment based on membership in a

---

[6] This state law claim is discussed in detail, *infra*.

protected class such as gender or race. *See McLaughlin v. Florida*, 379 U.S. 184, 192 (1964). In contrast, under the class-of-one theory, a plaintiff may have an equal protection claim even absent protected-class status if he or she alleges irrational and intentional differential treatment when compared with similarly situated individuals. *See Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). Plaintiff does not allege that he is a member of a protected class, and asserts that his Fourteenth Amendment right to Equal Protection was violated under a class-of-one theory. (Doc. 1, ¶ 200).

To assert a class-of-one claim, "a plaintiff must allege that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006). Mere allegations of mistreatment without identification of similarly situated individuals who were treated differently will not support an equal protection claim. *See Hudson v. Coxon*, 149 Fed. Appx. 118, 121 (3d Cir. 2005). Instead, the plaintiff must allege "occasions or circumstances" of differential treatment. *Young v. New Sewickley Twp.*, 160 Fed. Appx. 263, 266 (3d Cir. 2005).

In the instant case, Plaintiff alleges that his right to Equal Protection was violated based on the following: his conditions of confinement were different from other similarly situated inmates (Doc. 1, ¶ 200) and Wentzel, Lamas, Horton, Major A, Granlund, Robinson, Eaton, Vance, Foster, Walker, A unit staff, and the Maintenance Supervisor intentionally allowed this differential treatment (Doc. 1, ¶ 200); he was denied protection from violence that other similarly situated inmates are afforded (Doc. 1, ¶ 205-206); he was forced to "endure unconstitutional conditions of confinement while housed in the AC" which was different treatment than other similarly situated inmates (Doc. 1, ¶ 213) and allowed by Wentzel, Lamas,

Horton, Major A, Pasquale, Robinson, Eaton, Vance, Foster, the Maintenance Supervisor, and the AC unit staff (Doc. 1, ¶ 213); Rackovan, Varner, and Barnacle treated him differently than others in the AC (Doc. 1, ¶ 223); Bruno treated him substantially worse than other similarly situated inmates in the AC (Doc. 1, ¶ 222); his legal papers were taken and this resulted in different treatment than other similarly situated inmates (Doc. 1, ¶¶ 237-238); Vangorder, Martin, and Crawford treated Plaintiff differently from other similarly situated inmates (Doc. 1, ¶¶ 248-249); and Wentzel, Lamas, Varner, Horton, Rackovan, Barnacle, Major A, Pasquale, Robinson, Eaton, Vance, Foster, Vangorder, Brenda, and the AC unit staff threated Plaintiff differently than other similarly situated inmates. (Doc. 1, ¶ 261).

There are no facts alleged in this case that suggest Plaintiff was treated differently than other similarly situated inmates. Plaintiff has not identified any similarly situated individual who was treated differently. Rather, he has stated conclusory allegations that he was treated dissimilarly than other inmates without pointing to any specific circumstance or any such individual. As such, Plaintiff has failed to state a class-of-one equal protection claim and it is recommended that this claim be dismissed without prejudice for failure to state a claim. It is further recommended that Plaintiff be granted leave to amend this claim to the extent that he may point to facts that specifically indicate a similarly situated individual and a specific instance or instances where Plaintiff was treated dissimilarly to that individual.

L. FIRST AMENDMENT RETALIATION

A prisoner alleging retaliation in violation of the Constitution must satisfy three elements: (1) that he engaged in a constitutionally protected activity, *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001); (2) that he suffered some adverse action at the hands of prison officials sufficient to deter a person of ordinary firmness from exercising his constitutional rights, *Allah v.*

*Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000) (citing *Suppan v. Dadonna*, 203 F.3d 228, 235 (3d Cir. 2000)); and (3) that "his constitutionally protected conduct was 'a substantial or motivating factor' in the decision to" take the adverse action against him. *Rauser*, 241 F.3d at 333 (quoting *Mount Healthy Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). If a plaintiff establishes a *prima facie* case of retaliation, the burden then shifts to the prison officials to demonstrate, by a preponderance of the evidence, that their actions would have been the same, even if the plaintiff were not engaging in the constitutionally protected activities. *Rauser*, 241 F.3d at 334 ("Once a prisoner demonstrates that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest.").

### 1. Plaintiff's Retaliation Claim for the August 3, 2012, Letter

Plaintiff alleges that Lamas, Eaton, Vance, and Foster placed Plaintiff into segregation in retaliation for his complaint to the Office of Special Investigations and Intelligence ("OSII"). (Doc. 1, ¶ 214). On August 3, 2012, Plaintiff wrote a detailed complaint regarding the conditions of A unit and the details of the July 22, 2012, incident and sent it to Barnacle at OSII. (Doc. 1, ¶ 64). On August 24, 2012, Plaintiff was called to the SCI-Rockview security office. (Doc. 1, ¶ 88). Plaintiff was informed that his letter to OSII was forwarded to Eaton, Vance, Foster, Wentzel, Lamas, Horton, Granlund, and Major A. (Doc. 1, ¶ 91). Plaintiff was then placed into administrative segregation (AC) on August 24, 2012, and remained there until January 15, 2013. (Doc. 1, ¶ 95). Plaintiff states that he also lost his parole eligibility as a result of his placement in segregation. (Doc. 1, ¶ 95).

Plaintiff states that he engaged in protected activity, namely, his written complaints against SCI – Rockview. (Doc. 1, ¶ 97). To the extent Plaintiff alleges that he was retaliated against for filing these grievances against Defendants, he has satisfied the first prong. *See Noble v. Schmitt*, 87 F.3d 157, 162 (6th Cir. 1996) (A prisoner-plaintiff has a First Amendment right to file grievances against prison officials.). Second, the filing of a disciplinary charge, although not otherwise actionable under § 1983, is actionable if done in retaliation. *Freeman v. Miller*, 2012 WL 3233129 (M.D. Pa. Aug. 6, 2012) (citing *Sprouse v. Babcock*, 870 F.2d 450, 452 (8th Cir. 1989)). Plaintiff alleges adverse action at the hands of prison officials and states that he was placed in segregation as a result of engaging in the protected activity. (Doc. 1, ¶ 97). Lastly, Plaintiff alleges that he was placed in segregation as a direct result of the August 3, 2012, complaint letter. Plaintiff states that "It wasn't until the exact day that these def's received pl's letter complaining against them and SCIR conditions, that pl. was put into segregation." (Doc. 1, ¶ 98). As such, Plaintiff has alleged facts sufficient to state a claim for First Amendment retaliation against Lamas, Eaton, Vance, and Foster.

### 2. Retaliation Claims against Bruno[7]

Plaintiff brings several retaliation claims against Defendant Bruno. (Doc. 1, ¶¶ 225-231). Plaintiff states that between August 24, 2012, and January 15, 2013, while Plaintiff was in segregation, Bruno "carried on a campaign of harassment, sexual harassment, and retaliation against [plaintiff] which all began because [plaintiff] filed a constitutionally protected grievance against Bruno." (Doc. 1, ¶ 103). Specifically, Plaintiff alleges that on August 25, 2012, Bruno

---

[7] In connection with his retaliation claims against Bruno, Plaintiff states that Bruno caused "unnecessary and wanton infliction of pain" in violation of the Eighth Amendment. (Doc. 1, ¶ 232). In liberally construing the complaint, the Court will analyze the retaliation claims under the First Amendment, rather than the Eighth Amendment.

refused to inventory his property; on August 29, 2012, Bruno refused to call a nurse when Plaintiff requested one for severe pain; on September 10, 2012, Bruno yelled out to other inmates that Plaintiff was a rat; on September 22, 2012, Bruno refused to let Plaintiff use the law library; on October 11, 2012 and November 2, 2012, Bruno again called Plaintiff a rat; and on December 13, 2012, Bruno called Plaintiff a rapist, which caused other inmates to threaten to harm and kill Plaintiff. (Doc. 1, ¶¶ 104-119).

The Court finds that Plaintiff has stated a First Amendment retaliation claim against Bruno. Plaintiff alleges that he was retaliated against for filing a grievance against Bruno; Bruno engaged in adverse activity because of the grievance filed against him; and the filing of the grievance was the cause of the adverse activity. As such, Plaintiff has alleged facts sufficient to state a claim for First Amendment retaliation against Bruno.

### 3. Retaliation Claims against AC Staff

Plaintiff states that his legal papers were taken while he was in the AC unit. (Doc. 1, ¶ 237). Plaintiff states that this "theft" constitutes retaliation. (Doc. 1, ¶¶ 239-240). Plaintiff does not specify who took his papers while he was located in the AC Unit, nor does he allege that he engaged in constitutionally protected activity that resulted in the theft of these papers. Thus, as Plaintiff has not alleged any activity to satisfy the first prong of a First Amendment retaliation claim, Plaintiff has failed to state a claim for First Amendment retaliation in connection with his papers being taken while he was in the AC Unit. As such, it is recommended that this claim be dismissed without prejudice. To the extent Plaintiff can identify an individual or individuals in connection with this claim, and allege facts in accordance with the three prongs enumerated above, it is recommended that Plaintiff be granted leave to amend this claim.

26

### 4. Retaliation Claims against Vangorder

Plaintiff alleges that Vangorder retaliated against him on September 29, 2012 (Doc. 1, ¶ 251) and on November 4, 2012. (Doc. 1, ¶ 252). Plaintiff states that the staff in the AC, including Vangorder, were stealing cable to watch sports instead of performing their duties. (Doc. 1, ¶ 126). Plaintiff wrote a complaint to Lamas informing her of this activity, and as a result Vangorder was reprimanded. (Doc. 1, ¶ 127). Because of this, Plaintiff alleges that Vangorder began a campaign of harassment and retaliation against Plaintiff. (Doc. 1, ¶ 127). Specifically, Plaintiff alleges that on September 29, 2012, Vangorder called him a "rat" in front of other inmates (Doc. 1, ¶ 129) and threatened him regarding his time in the law library (Doc. 1, ¶ 130), and on November 4, 2012, Vangorder assaulted Plaintiff. (Doc. 1, ¶ 135). Plaintiff states that Vangorder punched him in the face while Crawford and Martin held Plaintiff. (Doc. 1, ¶ 135).

The Court finds that Plaintiff has stated a First Amendment retaliation claim against Vangorder. First, Plaintiff alleges that he engaged in protected activity by filing a grievance against Vangorder. Second, Plaintiff alleges that he was subjected to adverse action such as an assault and threats at the hands of Vangorder. Lastly, Plaintiff alleges that this adverse treatment was a direct result of the grievance filed against Vangorder. As such, Plaintiff has alleged facts sufficient to state a claim for First Amendment retaliation against Vangorder.

### M. FOURTEENTH AMENDMENT DUE PROCESS RIGHTS

Plaintiff alleges that his due process rights were violated when his legal papers were taken while he was in the AC unit. Specifically, Plaintiff states that his confidential legal papers were taken between August 24, 2012 and October 9, 2012 (Doc. 1, ¶ 237). Plaintiff does not allege who took these papers, but rather he states that the "documents were stolen by an official who had access to [Plaintiff's] property while it was in segregation and out of [Plaintiff's]

control." (Doc. 1, ¶ 120). Plaintiff further alleges that between November 4, 2012 and November 12, 2012, more of Plaintiff's property and confidential papers were stolen. (Doc. 1, ¶¶ 123, 238). Plaintiff filed grievances for these thefts, and those grievances were denied. (Doc. 1, ¶¶ 122, 125). On January 14, 2013, Plaintiff states that his property was taken so that it could be packed for his transfer. (Doc. 1, ¶ 187). Following his transfer, Plaintiff states that several of his personal items were stolen. (Doc. 1, ¶ 189). Lastly, Plaintiff alleges CO B took Plaintiff's personal property. (Doc. 1, ¶ 270).

Where a due process violation is alleged for the deprivation of property, prevailing law dictates that there is no cause of action under § 1983 if an adequate post-deprivation remedy exists under state law. *Reid v. Bruce Seville*, No. 96-2577, 1996 WL 421901 (E.D. Pa. July 19, 1996). *See Parratt v. Taylor*, 451 U.S. 527 (1981) (where prisoner loses personal belongings due to negligence of correctional officers, no civil rights violation occurs if state has adequate post-deprivation remedy). The bar against recovery under § 1983 for a due process violation applies to both intentional and negligent deprivations by state agents where the alleged deprivation is "effected through random and unauthorized conduct." *Hudson v. Palmer*, 468 U.S. 517, 533 (1983).

Even if it could be demonstrated that Plaintiff was intentionally deprived of his property, his claim would still be deficient. *Morris v. Schompert*, No. 09-694, 2011 WL 4955169, at *5 (W.D. Pa. Sept. 13, 2011). There can be no due process violation associated with the loss of property where a meaningful post-deprivation remedy is available. *Hudson*, 468 U.S. at 533. The Court of Appeals for the Third Circuit has held that a prison's grievance program and internal review process provide a post-deprivation remedy sufficient to satisfy due process. *Tillman v. Lebanon County Corr. Facility*, 221 F.3d 410, 42 (3d Cir. 2000). "Pennsylvania provides such a

remedy." *Tapp v. Proto*, 718 F.Supp.2d 598, 624 (E.D. Pa. 2010). *See Reid v. Seville*, No. 96–2577, 1996 WL 421901, at *3-4 (E.D. Pa. July 19, 1996) (holding that because Pennsylvania tort law offers a remedy for prison officials' unlawful deprivation of inmate property, inmate failed to state a constitutional claim); *Austin v. Lehman*, 893 F.Supp. 448, 454 (E.D. Pa. 1995) (finding that both inmate grievance procedure and state tort law action constituted adequate post-deprivation remedies). As an appropriate post-deprivation remedy exists for Plaintiff, he has failed to state a due process claim for deprivation of his personal property and it is recommended that this claim be **dismissed with prejudice**.

N.  S̲t̲a̲t̲e̲ ̲L̲a̲w̲ ̲C̲l̲a̲i̲m̲s̲

Plaintiff has also asserted state law claims for intentional infliction of emotional distress, negligent infliction of emotional distress and negligence, civil conspiracy, false light invasion of privacy, and assault and battery. Whether the Court will exercise supplemental jurisdiction is within its discretion. *Kach v. Hose*, 589 F.3d 626, 650 (3d Cir. 2009). That decision should be based on "the values of judicial economy, convenience, fairness, and comity." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). Because Plaintiff's state law claims arise out of the same case and controversy as the federal civil rights claim, the Court will exercise supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a).

### 1. Intentional Infliction of Emotional Distress

To state a claim for intentional infliction of emotional distress, a plaintiff must plead that the defendant's conduct: (1) was intentional or reckless; (2) was extreme and outrageous; (3) actually caused the distress; and (4) caused distress that was severe. *Cox v. Keystone Carbon*, 861 F.2d 390, 395 (3d Cir. 1988); *Mulgrew v. Sears Roebuck & Co.*, 868 F.Supp. 98, 103 (E.D. Pa. 1994). In order to state a cognizable claim, the conduct must be "so extreme in nature as to go

beyond all possible bounds of decency such that it would be regarded as utterly intolerable to civilized society." *Mulgrew*, 868 F.Supp. at 103; *see also Regan v. Twp. of Lower Merion*, 36 F. Supp. 2d 245, 251 (E.D. Pa. 1999); *Hoy v. Angelone*, 554 Pa. 134, 720 A.2d 745, 753 (Pa. 1998).

In Pennsylvania, "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." *Taylor v. Albert Einstein Med. Ctr.*, 562 Pa. 176, 754 A.2d 650, 652 (Pa. 2000). Under this standard, "[i]t has not been enough that the defendant has acted with an intent which is tortuous or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort." *Daughen v. Fox*, 372 Pa. Super. 405, 539 A.2d 858, 861 (Pa. Super. 1988) (quoting Restatement (Second) of Torts § 46(1) (1965), Comment(d)); *see also Baumgardner v. Ebbert*, No. 10-1459, 2013 WL 1249040 (M.D. Pa. Mar. 26, 2013).

In the instant case, Plaintiff alleges intentional infliction of emotional distress claims against Wentzel, Lamas, Varner, Horton, Rackovan, Barnacle, Major A, Granlund, Williams, Brenda, Koltay, Robinson, Eaton, Vance, Foster, Kellichner, Walker, CO A, and A unit staff for the events that transpired on July 22, 2012 (Doc. 1, ¶ 209); Wentzel Lamas, Horton, Major A, Pasquale, Robinson, Eaton, Vance, Foster, Maintenance Supervisor, and AC unit staff for conduct during his time in the AC unit (Doc. 1, ¶ 217); Bruno for his treatment of him (Doc. 1, ¶ 235); and Vangorder, Crawford, and Martin for their conduct on November 4, 2012 (Doc. 1, ¶¶ 256, 269).

Plaintiff does not allege that any of the defendants engaged in "extreme and outrageous" conduct that would rise to the level required for an intentional infliction of emotional distress

claim. *See, e.g., Hoy*, 720 A.2d at 754 (citing *Papieves v. Lawrence*, 437 Pa. 373, 263 A.2d 118 (Pa. 1970) (defendant, after striking and killing plaintiff's son with an automobile, and after failing to notify authorities or seek medical assistance, buried body in a field where it was discovered two months later and returned to parents); *Banyas v. Lower Bucks Hosp.*, 293 Pa.Super. 122, 437 A.2d 1236 (Pa. Super. Ct. 1981) (defendants intentionally fabricated records to suggest that plaintiff had killed a third party which led to plaintiff being indicted for homicide); *Chuy v. Phila. Eagles Football Club*, 595 F.2d 1265 (3d Cir. 1979) (defendant's team physician released to press information that plaintiff was suffering from fatal disease, when physician knew such information was false); *Johnson v. Caparelli*, 425 Pa. Super. 404, 625 A.2d 668, 672 (Pa. Super. Ct. 1993) (regarding a priest's sexual abuse of altar boy); *Field v. Phila. Elec. Co.*, 388 Pa. Super. 400, 565 A.2d 1170, 1183–84 (Pa. Super. Ct. 1989) (discussing claim that defendant deliberately vented highly radioactive steam on the plaintiff and attempted to conceal overexposure to radiation). Based on this case law and the record in this case, Plaintiff has not stated a claim for intentional infliction of emotional distress. *Ferguson v. Sniezek*, No. 10-02638, 2013 WL 3942090, at *17 (M.D. Pa. July 30, 2013). As such, it is recommended that Plaintiff's claim for intentional infliction of emotional distress against defendants be dismissed for failure to state a claim. As none of the conduct alleged in the complaint rises to a level of extreme or outrageous conduct, an amendment would be futile and it is recommended that this claim be dismissed with prejudice. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

## 2. Negligent Infliction of Emotional Distress and Negligence Claims

Under Pennsylvania law, "the cause of action for negligent infliction of emotional distress is restricted to four factual scenarios: (1) situations where the defendant had a contractual or fiduciary duty toward the plaintiff; (2) situations where the plaintiff was subjected

to a physical impact; (3) situations where the plaintiff was in a zone of danger, thereby reasonably experiencing a fear of impending physical injury; and (4) situations where the plaintiff observed a tortious injury to a close relative." *Toney v. Chester County Hosp.*, 961 A.2d 192, 197–98 (Pa. Super. Ct. 2008) (citing *Doe v. Phila. Cmty. Health Alts. AIDS Task Force*, 745 A.2d 25, 26 (Pa. Super. Ct. 2000)); *Ferguson v. Sniezek*, No. 10-02638, 2013 WL 3942090 (M.D. Pa. July 30, 2013). To state a *prima facie* cause of action for negligence, a plaintiff must allege: (1) a legal duty or obligation to conform to a certain standard of conduct; (2) a failure to conform to that standard; (3) a reasonably close causal connection between the conduct and resulting injury; and (4) actual damage or loss. *Wareham v. Jeffes*, 129 Pa.Cmwlth. 124, 564 A.2d 1314 (1989); *Williams v. Syed*, 782 A.2d 1090, 1093-94 (Pa. Commw. Ct. 2001).

Both a negligent infliction of emotion distress claim and a negligence claim require Plaintiff to allege a duty and breach of that duty. Prison officials have a duty to protect prisoners from violence at the hands of other prisoners. *Tabb v. Hannah*, No.10-1122, 2012 WL 3113856 (M.D. Pa. July 30, 2012). Being violently assaulted in prison is simply not a part of the penalty that criminal offenders pay for their offenses against society. *See Farmer*, 511 U.S. at 831–834. "Prison administrators . . . are charged with the duty of providing a reasonably safe place of confinement." *Davis v. United States*, No. 07-0566, 2009 WL 890938 (M.D. Pa. Mar. 31, 2009).

In the instant case, Plaintiff alleges a negligent infliction of emotional distress claim against Wentzel, Lamas, Horton, Major A, Granlund, Robinson, Eaton, Vance, Foster, Walker, A unit staff, the Maintenance Supervisor, Pasquale, AC unit staff, Rackovan, Varner, Barnacle, Bruno, Dale, Vangorder, Crawford, Martin, Frank (B), Burke, and Brenda for breach of their implied duty to care for Plaintiff's emotional well-being. (Doc. 1, ¶¶ 201, 216, 233, 241,

257, 267-68). Plaintiff alleges a negligence claim against Wentzel, Lamas, Horton, Major A, Pasquale, Robinson, Eaton, Vance, Foster, Maintenance Supervisor, AC unit staff, Rackovan, Varner, Barnacle, Bruno, Dale, Vangorder, Crawford, Martin, Frank (B), Brenda, and Burke stating that these defendants had a duty to care for plaintiff and breached that duty which resulted in harm to Plaintiff. (Doc. 1, ¶¶ 218, 236, 258, 266). Plaintiff further alleges that the AC unit staff had a duty to care for plaintiff's personal property and they breached that duty when the personal property was stolen. (Doc. 1, ¶¶ 242-243).

The Court finds that Plaintiff has alleged facts that a duty existed. However, while Plaintiff does allege that these defendants owed him a general duty of care, Plaintiff does not allege any facts suggesting a causal relationship between the alleged negligence and the injury. See *Williams v. Syed*, 782 A.2d 1090, 1095 (Pa. Commw. Ct. 2001). Plaintiff does not specify which defendants are directly negligent for what alleged conduct, and how their negligence caused the harm. Rather, Plaintiff more or less "lumps" defendants together and asserts that they were negligent. As such, the Court finds that Plaintiff has failed to state a claim for negligent infliction of emotional distress or negligence against the defendants and it is recommended that these claims be dismissed. It is further recommended that the Court grant Plaintiff leave to amend these claims to allege facts in accordance with the elements enumerated above.

### 3.   False Light Invasion of Privacy Claim against Defendant Bruno

To establish an invasion of privacy/false light claim a plaintiff must show there was "publicity, given to private facts, which would be highly offensive to a reasonable person and which are not of legitimate concern to the public." *Lennon v. Penn Waste, Inc.*, 2009 WL 3255238, at *1 (M.D. Pa. 2009) (citing *Rush v. Phila. Newspapers, Inc.*, 732 A.2d 648, 654

(Pa.Super.Ct.1999)). Furthermore, "[a] cause of action for invasion of privacy will be found where a major misrepresentation of a person's character, history, activities, or beliefs is made that could reasonably be expected to cause a reasonable man to take serious offense." *Gagliardi v. Experian Info. Solutions,. Inc.*, 2009 WL 365647, at *5 (W.D. Pa. 2009) (internal quotation omitted). In addition, there must be widespread dissemination, and communication to only a few will not suffice. *Gagliardi*, 2009 WL 365647, at *5 (finding that Defendants' reporting of Plaintiff's information to three collection agencies was not "widespread dissemination.").

Pennsylvania utilizes the Restatement (Second) of Torts in defining the tort of invasion of privacy. *Rossi v. Schlarbaum*, 600 F. Supp. 2d 650, 662 (E.D. Pa. 2009). "Publicity," requires that "the matter is made public by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." *Harris v. Easton Pub. Co.*, 335 Pa. Super. 141, 483 A.2d 1377, 1384 (1984) (citing Rest. 2d Torts § 652D); *Vogel v. W.T. Grant Co.*, 458 Pa. 124, 327 A.2d 133, 137 (1974) ("The disclosure ... must be a public disclosure, and not a private one; there must be, in other words, publicity. It is an invasion of his rights to publish in a newspaper that the plaintiff did not pay his debts, or to post a notice to that effect in a window on the public street, or to cry it aloud in the highway, but not to communicate the fact to the plaintiff's employer, or to any other individual, or even to a small group....") (quoting W. Prosser, Handbook of the Law of Torts § 117 at 810–12 (4th ed.1971)).

In the instant case, Plaintiff asserts a false light invasion of privacy claim against Bruno. (Doc. 1, ¶ 234). Plaintiff alleges that Bruno told other inmates that he was a rat, which "caused inmates to call [Plaintiff] a rat and a snitch and to threaten him with physical harm." (Doc. 1, ¶ 114). Plaintiff further alleges that Bruno told Vangorder and seven or eight inmates that Plaintiff

was a "baby raper" and this caused inmates to threaten to harm and kill Plaintiff. (Doc. 1, ¶ 118). The Court finds that this is not sufficient to satisfy the "widespread dissemination" element. *See Donnachie v. Frank S. Falzone & Assoc., PPLC*, No. 10-0429, 2010 WL 3191891 (M.D. Pa. Aug. 11, 2010). As such, Plaintiff's claim does not satisfy the "publicity" element of a false light invasion of privacy claim and it is recommended that this claim be dismissed with prejudice.

### 4.  Assault/Battery

The tort of assault requires that the defendant act with the intent to place the plaintiff in apprehension of imminent harmful or offensive bodily contact and that the plaintiff actually experience such apprehension. *See Heverly v. Simcox*, No. 05–1370, 2006 WL 2927262, at *9 (M.D. Pa. Oct.11, 2006); *D'Errico v. DeFazio*, 763 A.2d 424, 431 n.2 (Pa. Super. 2000). Battery requires proof that the defendant acted with the intent to cause harmful or offensive bodily contact with the person of the plaintiff and that such contact actually followed. *See Fulks ex rel. Daniel v. Gasper*, 439 F.Supp.2d 372, 379 (M.D. Pa. 2006); *Montgomery v. Bazaz–Sehgal*, 742 A.2d 1125, 1130 (Pa. Super. Ct. 1999).

In the instant case, Plaintiff brings an assault and battery charge against Vangorder, Crawford, and Martin for the physical altercation which occurred on November 4, 2012. (Doc. 1, ¶¶ 255, 265). Plaintiff alleges that Vangorder punched Plaintiff while Crawford and Martin held him down. Based on these facts, the Court finds that Plaintiff has stated a claim for assault and/or battery against Vangorder, Crawford, and Martin.

### 5.  Civil Conspiracy

To state a civil action for conspiracy under Pennsylvania law, a complaint must allege: (1) a combination of two or more persons acting with a common purpose to do an unlawful act

or to do a lawful act by unlawful means or unlawful purpose; (2) an overt act done to further the common purpose; and (3) actual legal damage. *DeBlasio v. Pignoli*, 918 A.2d 822, 826 (Pa. Commw. Ct. 2007) (citing *Pappert v. TAP Pharm. Prods. Inc.*, 868 A.2d 624 (Pa. Cmwlth. 2005)). Additionally, "absent a civil cause of action for a particular act, there can be no cause of action for civil conspiracy to commit that act." *McKeeman v. Corestates Bank, N.A.*, 751 A.2d 655, 660 (Pa. Super. Ct. 2000). Proof of malice is an essential part of a cause of action for conspiracy. *Burnside v. Abbott Laboratories*, 351 Pa. Super. 264, 505 A.2d 973, 980 (1985); *Goldstein v. Phillip Morris, Inc.*, 2004 PA Super 260, 854 A.2d 585, 590 (Pa. Super. Ct. 2004).

Plaintiff alleges a state tort claim of civil conspiracy against Wentzel, Lamas, Horton, Major A, Pasquale, Robinson, Eaton, Vance, Foster, Maintenance Supervisor, and AC unit staff. (Doc. 1, ¶ 219). Plaintiff states that these defendants conspired together to deprive plaintiff of his rights. The Court finds that there are no allegations in the complaint that would support a cause of action for civil conspiracy. There are no factual allegations that the defendants acted in concert with one another to commit an unlawful act. Plaintiff does not allege facts indicating a conspiracy or an agreement to act unlawfully, but merely makes bare allegations that prison officials did so. *See Brown v. Blaine*, 833 A.2d 1166, 1173 (Pa. Commw. Ct. 2003). Accordingly, there is nothing in the complaint to suggest a cause of action for state civil conspiracy, and it is recommended that this claim be dismissed with prejudice.

**IV. RECOMMENDATION**

Based on the foregoing, it is recommended as follows:

A. It is recommended that the following Defendants and claims be **dismissed with prejudice**:

1. Plaintiff's claims against the Pennsylvania Department of Corrections, the Office of Special Intelligence and Investigations, and SCI – Rockview.

2. The official capacity claims against all individually named defendants.

3. Claims against Defendants Wentzel, Lamas, Horton, Major A, Granlund, Robinson, Eaton, Vance, Foster, Walker, A unit staff, the Maintenance Supervisor, Varner, Rackovan, Kellichner, and CO A based on their supervisory roles.

4. Verbal harassment claims against Granlund, Vangorder, Taylor, and Bruno.

5. Plaintiff's Eighth Amendment excessive force claim against CO A for failure to state a claim.

6. Plaintiff's Eighth Amendment deliberate indifference to a serious medical need claim against Williams.

7. Plaintiff's Fourteenth Amendment Due Process claim for deprivation of his personal property.

8. Plaintiff's intentional infliction of emotional distress claims.

9. Plaintiff's false light invasion of privacy claim against Bruno.

10. Plaintiff state tort claim of civil conspiracy against Wentzel, Lamas, Horton, Major A, Pasquale, Robinson, Eaton, Vance, Foster, Maintenance Supervisor, and AC unit staff.

B. It is recommended that the following Defendants and claims be **dismissed without prejudice, but that Plaintiff be granted leave to amend these claims**:

1. Plaintiff's claims against Defendants Hardy, Kearns, Ranio, Campbell, Greene, Cutler, Phillips, Frank (A), CO C, Lee, Hannon, and Alexander, for lack of personal involvement.

2.  Plaintiff's Eighth Amendment failure to protect claim against Wentzel, Lamas, Horton, Varner, Rackovan, Barnacle, Major A, Granlund, Robinson, Eaton, Vance, Foster, Kellichner, Walker, CO A, A unit staff, Pasquale, Dale, and Nurse A.

3.  Plaintiff's Eighth Amendment deliberate indifference to a serious medical need claim against Brenda and Koltay.

4.  Plaintiff's Eighth Amendment conditions of confinement claim against Wentzel, Lamas, Horton, Major A, Granlund, Robinson, Eaton, Vance, Foster, Walker, A unit staff, the Maintenance Supervisor, Pasquale, AC unit staff, Burke, and Frank (B).

5.  Plaintiff's Fourteenth Amendment Equal Protection claim against Wentzel, Lamas, Horton, Major A, Granlund, Robinson, Eaton, Vance, Foster, Walker, A unit staff, the Maintenance Supervisor, Pasquale, AC unit staff, Rackovan, Varner, Barnacle, Bruno, Vangorder, Martin, Crawford, and Brenda.

6.  Plaintiff's First Amendment retaliation claim against AC Staff related to his personal papers being taken.

7.  Plaintiff's negligent inflection of emotional distress claims.

8.  Plaintiff's negligence claims.

C.  It is recommended that **Plaintiff be allowed to proceed with the following claims**:

1.  Plaintiff's Eighth Amendment excessive force claim against Vangorder, Crawford, and Martin.

2.  Plaintiff's Eighth Amendment failure to intervene claim against CO A.

3.  Plaintiff's Eighth Amendment claim against Bruno for calling Plaintiff a "snitch."

4.  Plaintiff's First Amendment retaliation claim against Lamas, Eaton, Vance, and Foster for placing him in segregation.

5.  Plaintiff's First Amendment retaliation claim against Bruno.

6.  Plaintiff's First Amendment retaliation claim against Vangorder.

7.  Plaintiff's assault and battery claim against Vangorder, Crawford, and Martin.

It is further recommended that Plaintiff be directed to file one complete amended complaint, which includes both the claims that are allowed to proceed and those that are dismissed without prejudice that Plaintiff seeks to amend.

BY THE COURT:

Dated: July 28, 2014                           *s/ Karoline Mehalchick*

KAROLINE MEHALCHICK
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

ANTHONY SALTALAMACCHIA,

      Plaintiff,       CIVIL ACTION NO. 3:14-CV-00868

  v.                (NEALON, J.)
                    (MEHALCHICK, M.J.)

JOHN WENTZEL, et al.,

      Defendants

## NOTICE

  **NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing **Report and Recommendation** dated **July 28, 2014**. Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636(b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

**Dated: July 28, 2014**

               *s/ Karoline Mehalchick*
               **KAROLINE MEHALCHICK**
               **United States Magistrate Judge**