## UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF PENNSYLVANIA

ANTHONY SALTALAMACCHIA,   :
      Plaintiff,   :   CIVIL ACTION NO.: 3:14-CV-0868
         :   (Judge Nealon)
      v.   :   (Magistrate Judge Mehalchick)
         :
         :
JOHN WENTZEL, ET AL.,   :
      Defendants   :

## MEMORANDUM

### I.     BACKGROUND

On May 6, 2014, Plaintiff, Anthony Saltalamacchia, an inmate currently confined at State Correctional Institution-Benner, Bellefonte, Pennsylvania ("SCI-Benner") filed the above-captioned action and a motion for leave to proceed in forma pauperis, which was granted on December 8, 2014. (Docs. 1-2, 15). Plaintiff's original complaint presented claims under 42 U.S.C. § 1983 and claims pursuant to state law based on the events alleged to have occurred while he was incarcerated at State Correctional Institution-Rockview, Bellefonte, Pennsylvania ("SCI-Rockview") from March 2, 2012, to January 15, 2013. See (Doc. 1). The Court dismissed a number of claims and Defendants in the original complaint with prejudice, some without prejudice, and directed Plaintiff to file an amended complaint. See (Docs. 14-15).

On January 5, 2015, Plaintiff filed an amended complaint. (Doc. 17).

Plaintiff advances claims for violations of his federal civil rights and state laws. (Doc. 17). In total, Plaintiff asserts approximately114 legal claims and names approximately 42 Defendants. (Id.). Named as Defendants are the following: John Wentzel, Secretary of the Pennsylvania Department of Corrections ("DOC"); Marirosa Lamas, Superintendent of SCI-Rockview; Jeffery Horton, Deputy Superintendent of SCI-Rockview; Jeffery Rackovan, Grievance Coordinator of SCI-Rockview; James Barnacle, Director of the Office of Special Intelligence and Investigations ("OSII"); John Doe Major A; Mr. Granlund, Unit Manager of A unit; Mr. Pasquale, Unit Manager of the AC housing unit; Dr. Burke, mental health care administrator of SCI-Rockview; Nurse Brenda; Julie Koltay, Physician Assistant at SCI-Rockview; Jane Doe Nurse A; Major Robinson; Captain Eaton; Captain Dale; Lieutenant Vance; Lieutenant Foster; Lieutenant Kearns; Lieutenant Kellichner; Lieutenant Campbell; Sergeant Greene; Sergeant Cutler; Sergeant Jack Vangorder; Sergeant Phillips; Sergeant Walker; Correctional Officer ("CO") Frank A; CO Frank B; John Doe CO A; John Doe CO C; John Doe CO D; John Doe CO E; CO Bruno; CO Crawford; CO Martin; CO Ranio; CO Lee; CO Hannon; CO Alexander; Taylor; John Does A unit staff; John Does AC unit staff; and John Doe Maintenance Supervisor. (Id.).

As for his claims, Plaintiff divides them into ten (10) "sets of claims." (Id.).

2

His first set of claims focuses primarily on the conditions of his confinement at SCI-Rockview in March 2012. (Doc. 17, pp. 4-7). According to Plaintiff, his rights under the Eighth Amendment to the United States Constitution were violated as a result of "environmental tobacco smoke," poor ventilation, overcrowding, deficient "house keeping" and sanitation, and an unsafe living situation. (Id.).

Plaintiff's second set of claims initially concern several Defendants that allegedly failed to protect him after he reported that he was being threatened and witnessed robberies on his cell block on July 16, 2012. (Id. at pp. 7-12). Plaintiff claims that on July 22, 2012, Defendant "CO A opened [Plaintiff's] cell door for" other inmates to enter Plaintiff's cell. (Id. at p. 8). According to Plaintiff, these inmates then assaulted and robbed Plaintiff. (Id.). Plaintiff allegedly received inadequate medical care for the injuries he sustained from the assault, which caused him "unnecessary and wanton infliction of pain." (Id.). Next, Plaintiff alleges that, after the assault, he was moved to the "AC housing unit." (Id. at p. 9). He states that he was then denied a single cell, and instead was going to be placed "in a cell with an unknown inmate." (Id.). Plaintiff allegedly refused this arrangement and thus, was "issued a misconduct." (Id.). Plaintiff then claims that he was "placed in cell 1028." (Id.). According to Plaintiff, "cell 1028" was

unventilated, "excessively hot," and unsanitary. (Doc. 17, p. 9). Plaintiff allegedly complained to staff and filed a grievance about the conditions of "cell 1028" and that he was "forced to remain in the cell for several days." (Id.). Additionally, Plaintiff alleges that his attempts to have the July 22, 2012 assault investigated were stifled. (Id.).

Plaintiff's third set of claims concern the allegedly inadequate medical care he received after he was assaulted on July 22, 2012. (Id. at pp. 12-13). In particular, Plaintiff claims that he was denied access to adequate medical care in late July 2012 through August 2012. (Id.). According to Plaintiff, since the assault, he has suffered "chronic migraines on a daily basis." (Id. at p. 12). Plaintiff's migraines "are extremely painful, last 8-12 hours, are debilitating to everyday normal function, and require daily medication." (Id.). He claims that on July 29, 2012, and July 31, 2012, he "submitted medical complaints regarding these agonizing headaches which had been persisting since" the assault. (Id.). Plaintiff states that he "was seen on [August 3, 2012,] by [Defendant] Koltay." (Id.). Plaintiff alleges that Defendant Koltay "prescribed [Plaintiff] Elavil-25 mg." (Id.). Also on August 3, 2012, Plaintiff states that he "finally received facial and cranial x-rays–12 days after suffering head trauma." (Id.). He states that "[d]espite the Elavil medication, [Plaintiff] continued to have severe migraines."

4

(Doc. 17, p. 12). On August 5 and 6, 2012, respectively, Plaintiff claims that he submitted medical complaints. (Id.). He states that he "was allegedly scheduled to be seen by medical on [August 7, 2012,] but was not aware of any such appointment." (Id.). As of August 5, 2012, Plaintiff claims that he "had not received treatment for his loss of vision so he filed grievance #423058," which was denied. (Id.). As of August 16, 2012, Plaintiff alleges that his "medical complaints that his Elavil was not working and he was suffering immense pain were not answered." (Id.). He states that he then filed "yet another medical complaint." (Id.). According to Plaintiff, on August 26, 2012, "35 days after being attacked–[he] was finally seen for his concussions by [Defendant] Koltay." (Id.). Allegedly, Defendant Koltay "refused to respond to [his] complaints regarding his migraines, pain, and inadequate medication." (Id.). On September 11, 2012, Plaintiff claims that he "submitted yet another medical complaint about the Elavil, migraines, and pain." (Id.). Plaintiff states that he "was finally seen on [September 17, 2012,] by [Defendant] Koltay." (Id.). He alleges that Defendant Koltay "raised the dosage of the Elavil which effectively treated [Plaintiff's] migraines and the serious pain." (Id.). According to Plaintiff, when he "asked [Defendant Koltay] why it took her so long and why she didn't address the issue on [August 26, 2012], she responded, 'I don't answer to you.'" (Id.).

Additionally, Plaintiff claims that medical staff Defendants were deliberately different to the medical needs caused by the July 22, 2012 assault. (Doc. 17, pp. 12-13).

As for Plaintiff's fourth set of claims, he alleges that he was retaliated against for writing a letter to OSII. (Id. at pp. 13-17). In particular, Plaintiff claims that on August 24, 2012, he was "called to the security office where he met [Defendants] Eaton, Vance, and Foster." (Id. at p. 13). Plaintiff states that Defendant Eaton informed Plaintiff that Defendants Eaton, Vance, and Foster, "along with Lamas, Wentzel, Horton, Major A, Robinson, Rackovan, and Granlund had a copy of [Plaintiff's August 3, 2012] letter to OSII which ultimately criticized [SCI-Rockview] staff and conditions as well as problems with security." (Id.). According to Plaintiff, in response to his August 3, 2012 letter, he was placed in administrative segregation on August 24, 2012. (Id.). Plaintiff claims that he remained in administrative segregation until January 15, 2013." (Id.). While in administrative segregation, Plaintiff states that he was housed "under extremely adverse conditions, done out of retaliation." (Id.). Plaintiff alleges that "[t]he conditions of segregation were a significant and atypical departure from those of general population of" SCI-Rockview. (Id.). Specifically, Plaintiff claims that he "was denied all phone calls, all out-of-cell exercise, he

6

could not attend school or mandatory rehabilitative programs that resulted in the denial of parole, and he was confined to his cell 24-hours a day." (Doc. 17, p. 13). Additionally, he states that he "was denied all hearings in which [he] could challenge his [administrative segregation] placement." (Id.). Plaintiff claims that he was also "subjected to the deprivation of his basic human needs–sanitation, shelter, and protection from violence and threats of violence; along with a myriad of constitutional violations, undue censorship, retaliation, excessive force, illegal seizure, abuse, harassment, cruel and unusual punishment, and due process violations." (Id. at p. 14). Also, Plaintiff alleges that where he was housed for administrative segregation, "the AC Unit," was "inhumane" and "unfit for habitation." (Id.). These conditions included the presence of excessive tobacco smoke, inadequate ventilation, poor sanitation, inadequate safety and security, a general lack of out-of-cell activities and programming, constant illumination in his cell, and numerous invasive strip searches. (Id. at pp. 14-17).

Plaintiff's fifth set of claims is subdivided into seven (7) "Events." (Id. at pp. 17-20). These claims and events concern the alleged "campaign of harassment against" Plaintiff by Defendant Bruno that occurred between August 24, 2012, and January 14, 2013, while Plaintiff was in administrative segregation. (Id.). According to Plaintiff, the "campaign of harassment" "began because [Plaintiff]

7

filed a grievance against Bruno on [August 3, 2012]–a protected action." (Doc.

17, p. 17).  Plaintiff claims that "Bruno responded with a series of retaliatory

adverse actions in direct response to [Plaintiff's] grievances and complaints

against him." (Id.).  He alleges that Defendant Bruno sexually harassed Plaintiff,

denied him adequate medical care, labeled Plaintiff a "rat," "snitch," and a "baby

raper" in front of other inmates, denied him access to the law library, unlawfully

confiscated Plaintiff's legal materials, and verbally threatened him. (Id. at pp. 17-

20).

His sixth set of claims concern the theft of his personal and legal property.

(Id. at pp. 20-21).  First, Plaintiff alleges that "[a]t some point between [August 24,

2012,] and [October 19, 2012], 113 pages of [his] confidential legal papers

associated with the § 1983 lawsuit against [SCI-Rockview] staff; dozens of [his]

copies and originals of grievances, request slips, complaints and other papers were

stolen from [his] property box in the AC by CO E." (Id. at p. 20).  According to

Plaintiff, "[t]his property has been delivered to [Defendant Bruno] on [August 25,

2012] for safe keeping." (Id.).  Plaintiff claims that [t]his property was locked in a

security cage only accessible to staff." (Id.).  He contends that [t]his theft was, as

can be inferred, done out of retaliation for [Plaintiff's] § 1983 suit against [SCI-

Rockview] staff and officials, as the target of the theft was [Plaintiff's] legal

papers and supporting documents." (Doc. 17, p. 21).  Plaintiff also claims that his complaints concerning this alleged theft were denied.  (Id.).

As for Plaintiff's seventh set of claims, he alleges that "[a]t some point between" November 4, 2012 and November 12, 2012, Defendant CO C stole or lost Plaintiff's personal and legal property.  (Id.).  Plaintiff states that this alleged action by Defendant CO C "coincides with [Defendant] Vangorder's physical attack on" Plaintiff on November 4, 2012."  (Id.).  He claims that the property subject to the alleged theft was "delivered to [Defendant] CO Bruno on [August 25, 2012,] for safekeeping."  (Id.).  Plaintiff contends that "[t]his theft was, as can be inferred, was done in direct retaliation for [Plaintiff's] § 1983 lawsuit and grievances and complaints against" SCI-Rockview staff.  (Id.).  Plaintiff also states that the complaints he raised about this alleged theft were denied.  (Id.).

Plaintiff's eighth set of claims are subdivided into two (2) events.  (Id. at pp. 22-26).  The first "event" occurred on September 29, 2012.  (Id. at p. 22).  Plaintiff claims that he "asked Vangorder if he could use the law library," and, as a result, "Vangorder became very angry" at Plaintiff.  (Id.).  According to Plaintiff, Vangorder then labeled Plaintiff a "rat," and a "snitch," which "caused the inmates to call [Plaintiff] a rat and a snitch and to threaten to hurt and kill him, causing [Plaintiff] extreme fear for his life."  (Id.).  Plaintiff then claims that "Vangorder . .

9

. returned to [Plaintiff's] cell and" threatened Plaintiff with violence. (Doc. 17, p. 22). Vangorder's alleged threats of violence caused Plaintiff "extreme psychological harm–anxiety, humiliation, embarrassment, fear, depression, stress, sleep loss/nightmares, agitation, panic attacks, frustration, and tension–which still heavily persists and is severe enough to cause [Plaintiff] physical pain." (Id.). He claims that he then filed a "complaint of this incident with Wetnzel, Lamas, Horton, Barnacle, Major A, Pasquale, Robinson, Eaton, and Vance–verbally and/or in writing–without response." (Id.). Plaintiff states that the "failure to transfer [Plaintiff] or otherwise respond to his complaints left [him] vulnerable to a physical attack by Vangorder on" November 4, 2012. (Id.) In addition to the complaints, Plaintiff also states that he filed a grievance concerning this "incident," which was assigned to Defendant Dale. (Id.). Plaintiff claims that this grievance was not investigated. (Id.). He alleges that he then appealed Defendant Dale's handling of the grievance to Defendant Lamas, but his claims concerning "the threats" were ignored. (Id.). Plaintiff claims that due to Defendants Dale and Lamas' handling of his grievance he was:

> left unprotected and subject to what would eventually be two physical attacks at the hands of Vangorder, and Vangorder's threats and other speech, [Plaintiff] suffered extreme fear because Vangorder was in a position with which to carry out his threats–which he did twice–and DOC officials made no

10

> attempts to protect [Plaintiff] or prevent Vangorder from carrying out his threats, and the threat itself, along with his body language, seemed credible and caused [Plaintiff] more than de minimus harm.

(Doc. 17, p. 23).

As for the "second events," Plaintiff alleges that "[o]n the night of [November 4, 2012,] at approx 9:20 p.m. [Plaintiff] attempted suicide as a direct result of [SCI-Rockview] staff's actions and inactions–the repeated harassment, abuse, and retaliation by Bruno and Vangorder and DOC officials' failure to respond to [Plaintiff's] complaints–and from the daily inmate threats and constant fear [Plaintiff] was subjected to." (Id.). Plaintiff claims that he was "discovered by [Defendants] Vangorder, Martin, and Crawford." (Id.). According to Plaintiff, Defendant Crawford "removed the slipknot from [Plaintiff's] neck," and Defendant Martin "then rolled [Plaintiff] onto his right side while Crawford handcuffed [Plaintiff] in front of his body." (Id.). Plaintiff claims that while he was being held by Defendants Crawford and Martin, Defendant Vangorder "punched" Plaintiff "very hard in the left jaw, nearly dislocating it." (Id.). Plaintiff claims he was then "pulled from his bed by Crawford and Martin by the handcuffs and dropped to the floor." (Id.). Plaintiff states that either Martin or Crawford kicked Plaintiff in the groin area. (Id.). Then, according to Plaintiff, he

11

was "lifted by the handcuffs by Crawford and Martin and seated on his bed."
(Doc. 17, p. 23).  Plaintiff alleges that Defendant Vangorder then "grabbed a
handful of [Plaintiff's] hair and pulled hard because [Plaintiff] would not look at
him." (Id.).  Plaintiff states that Vangorder then harassed and threatened him with
violence. (Id.).

Plaintiff continues by claiming that Defendants "Kellichner and Nurse A
then arrived." (Id.).  He allegedly "informed Kellichner and Nurse A what
happened." (Id.).  He claims that his injuries were "never properly documented,"
and that Defendants Kellichner and Nurse A were deliberately indifferent to
Plaintiff's serious medical needs. (Id. at pp. 23-24).  Further, Plaintiff states that
his "repeated requests to [Defendant] Dr. Burke for mental health treatment were
ignored and caused [Plaintiff] to suffer undue psychological pain and harm from
this incident . . . ." (Id. at p. 24).  Plaintiff claims that "neither Vangorder, Martin,
Crawford, Kellichner, or Nurse A reported [Plaintiff's] allegations of abuse
against Vangorder, Crawford, and Martin." (Id.).  Plaintiff also states that he
made "complaints of the incident to [Defendants] Wentzel, Lamas, Horton,
Barnacle, Major A, Pasquale, Burke, Eaton, Robinson, Vance, and Foster without
response." (Id.).  Also, his requests "to be separated from Vangorder were
denied." (Id.).  After, the incident Plaintiff was moved to the "medical unit,

referred to as 'TBO.'" (Doc. 17, p. 25). While in the "TBO," Plaintiff claims he was housed in an "inhumane cell." (<u>Id.</u> at p. 21). According to Plaintiff, his cell in the "TBO" was unsanitary, cold, and did not have a mattress or soap. (<u>Id.</u>). His complaints about the conditions were ignored or denied until he was moved to a new cell on November 7, 2012. (<u>Id.</u> at pp. 25-26). Finally, Plaintiff claims that on November 14, 2012, while he was in the shower, he was harassed by Defendants Vangorder and Taylor. (<u>Id.</u> at p. 26).

Plaintiff's ninth set of claims concern his relocation to the "AC" unit on December 3, 2012. (<u>Id.</u>). On December 5, 2012, Plaintiff claims that Defendant Vangorder came to Plaintiff's cell and told his cellmate that he was a "snitch." (<u>Id.</u>). Plaintiff also states that Defendant Vangorder then gave Plaintiff's cellmate "tobacco and a yellow lighter." (<u>Id.</u>). According to Plaintiff, "[a]bout ten (10) minutes later" he was the victim of an assault at the hands of his cellmat, which Plaintiff claims was the result of Defendant Vangorder's statements and actions. (<u>Id.</u> at pp. 26, 27). Next, Plaintiff claims that Defendant CO Frank B heard the assault and came to Plaintiff's cell. (<u>Id.</u> at p. 26). Defendant Frank B then ordered Plaintiff's cellmate to stop the assault, but the assault continued. (<u>Id.</u>). Defendant Frank B then allegedly left Plaintiff's cell and returned with Vangorder and Crawford. (<u>Id.</u>). "Eventually Crawford opened the cell door and Vangorder" told

13

Plaintiff's cellmate to stop the assault. (Doc. 17, p. 26). Plaintiff alleges that he then heard Defendant Vangorder instruct Plaintiff's cellmate to claim that Plaintiff was the aggressor. (Id.).

Plaintiff states that "[a]pproximately 20 minutes later [Plaintiff] was taken back to medical ("TBO") where he was placed in a shower holding cell for about another 20 minutes." (Id.). He claims to have been assessed by "Nurse Brenda." (Id.). In addition to claiming that Defendant Brenda provided him with inadequate medical care for the injuries he sustained from the assault, Plaintiff alleges that Defendant Brenda did not properly document his injuries and falsified his records. (Id.). After spending approximately a week in the TBO, Plaintiff was "forced to return to the AC [unit] by [Defendants] Eaton and Vance on December 11, 2012, with obvious disregard to the continuing violations of [Plaintiff'] constitutional rights and his safety." (Id. at p. 27).

Plaintiff also claims that his complaints and reports about the December 5, 2012 incident were ignored or went unanswered. (Id. at pp. 26-27). Additionally, Plaintiff alleges that on December 14 and 18, 2012, he was "bullied, coerced, and threatened by [Defendants] Eaton, Vance, and Foster into withdrawing several complaints against Bruno and Vangorder, with threats of indefinite confinement in segregation, nonintervention in future abuse, denial of parole, and denial of

14

transfer." (Doc. 17, p. 27).  According to Plaintiff, "[t]he statements that [Plaintiff] was forced to make and sign were done involuntarily."  (Id.).

Plaintiff's tenth set of claims concern his missing personal and legal property.  (Id. at pp. 27-28).  In particular, Plaintiff claims that on January 14, 2013, "all of [his] property was taken from him so that it could be packed for his transfer the following day."  (Id. at p. 27).  According to Plaintiff, "[a]t some point between then and the following morning a number of [Plaintiff's] personal property was altered, lost, destroyed, and/or stolen."  (Id.).  Plaintiff alleges that on January 14, 2013, his property was delivered to Defendant "CO D . . . for packing and safekeeping until it could be returned to [Plaintiff] following his transfer." (Id. at p. 28).  Plaintiff claims that his property included "a number of products and dozens of pages of originals and copies of [Plaintiff's] complaints, grievances, request slips, notes, etc. dealing with the complaints set forth in this complaint." (Id. at pp. 27-28).  He alleges that this action was done "in retaliation for [Plaintiff's] continued grievances and complaints and legal action against [SCI-Rockview] and DOC staff."  (Id. at p. 28).

On December 21, 2015, Defendants filed a motion to dismiss for failure to state a claim upon which relief can be granted and for violations of Federal Rule of Civil Procedure 20, along with a brief in support.  (Docs. 46, 47).  On January

15

28, 2016, Plaintiff filed a brief in opposition to Defendants' motion. (Doc. 51).
On August 15, 2016, Magistrate Judge Karoline Mehalchick issued a Report
recommending that Defendants' motion to dismiss be granted in part and denied in
part. (Doc. 61). As discussed in more detail below, Magistrate Judge Mehalchick
recommends that Defendants' motion should be granted to the extent it seeks to
dismiss Plaintiff's amended complaint for violations of Federal Rule of Civil
Procedure 20. (Id. at pp. 10-14). The Magistrate Judge also recommends that the
portions of Defendants' motion raising the defenses of statute of limitations and
administrative exhaustion should be denied without prejudice as to their right to
reassert this defense pending the filing of Plaintiff's second amended complaint.
(Id. at pp. 14-18). Finally, Magistrate Judge Mehalchick recommends that
Plaintiff be advised "that his second amended complaint must allege specific facts
to support an inference of actual knowledge on the part of each supervisory
Defendant with regard to each claim of supervisory liability," and that Plaintiff's
"alleged violations of his Fourteenth Amendment right to equal protection" be
dismissed with prejudice for failure to state a claim upon which relief may be
granted. (Id. at pp. 18-20). On August 24, 2016, Plaintiff filed a "motion for
reconsideration" of the August 15, 2016 Report and Recommendation, which
objects to the Magistrate Judge's recommendation that Plaintiff's equal protection

claims be dismissed with prejudice. (Doc. 62, p. 1). For the reasons set forth below, the Report and Recommendation, (Doc. 61), will be adopted in part.

## II.     STANDARD OF REVIEW

"When objections are timely filed to the report and recommendation of a magistrate judge, the district court must review de novo those portions of the report to which objections are made." Jaludi v. Citigroup, 2016 U.S. Dist. LEXIS 115962, at *4 (M.D. Pa. Aug. 30, 2016) (Mannion, J.) (citing 28 U.S.C. § 636(b)(1); Brown v. Astrue, 649 F.3d 193, 195 (3d Cir. 2011)). The written objections must "specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections." M.D. Pa. L.R. 72.3.

In the absence of specific objections, review may properly be limited to ascertaining whether there is clear error that not only affects the rights of the plaintiff, but also seriously affects the integrity, fairness, or public reputation of judicial proceedings. See Sanders v. Downs, 2013 U.S. Dist. LEXIS 89743, at *8-9 (M.D. Pa. 2013) (Caputo, J.) (explaining that the court reviews those portions of the R&R to which specific objections are made de novo, while the 'remainder of the R&R is reviewed for clear error"); Cruz v. Chater, 990 F. Supp. 375, 377 (M.D. Pa. 1998) (Vanaskie, J.). The district court may accept, reject, or modify, in

whole or in part, the findings and recommendations contained in the report. 28
U.S.C. § 636(b)(1)(C); M.D. Pa. L.R. 72.3.

## III.   DISCUSSION

### A.   Improper Joinder

Magistrate Judge Mehalchick first addressed Defendants' claim that
Plaintiff's amended complaint fails to comply with Federal Rules of Civil
Procedure 8 and 20. See (Doc. 61, p. 10). Magistrate Judge Mehalchick found
that "Plaintiff's amended complaint consists of a catalogue of accusations
encompassing the entire 319 day duration of his incarceration at SCI-Rockview."
(Id. at p. 11). "The amended complaint is vast in scope, containing 283
paragraphs and a purported 114 legal claims, divided into 10 'sets of claims,'
asserted under state and federal law against 41 Defendants." (Id.). According to
the Magistrate Judge, "the sheer size of the amended complaint and number of
distinct legal claims renders the efficient litigation of this case extremely difficult
for both parties and the Court.[footnote omitted]" (Id. at p. 12). "Thus, even
liberally construed," Magistrate Judge Mehalchick found, "Plaintiff's amended
complaint satisfies neither the requirement under Rule 8(d)(1) that pleadings must
be 'simple, concise, and direct' nor Rule 20(a)'s joinder requirements." (Id.).

In reaching this conclusion, Magistrate Judge Mehalchick determined that

"[t]he separate and distinct events and claims in Plaintiff's amended complaint do not 'aris[e] out of the same transaction, occurrence or series of transactions or occurrences' and do no raise a 'question of law or fact common to all [D]efendants,' as is requires by Rule 20." (Doc. 61, p. 12) (alterations in original). Specifically, "[a]s noted by Defendants, 'the 10 separate groups of claims alleged in the complaint appear to be separate transactions, allegedly committed by largely different actors at divergent times and places.'" (Id.). Magistrate Judge Mehalchick continued by finding that "Plaintiff does not assert all 114 claims against all 41 Defendants; each claim is brought only against one or a group of particular Defendants." (Id.). "For example, Plaintiff's claims arising from different occasions where he was allegedly denied adequate medical treatment are not properly joined in the same lawsuit with claims alleging that different Defendants denied Plaintiff's right of access to the courts by stealing his legal materials." (Id.). "Furthermore," Magistrate Judge Mehalchick determined, "different sets of claims are alleged to have taken place in at least three different housing [] units of SCI-Rockview." (Id.). As a result, Magistrate Judge Mehalchick found that the "Federal Rules of Civil Procedure do not authorize Plaintiff's joinder of unrelated claims across unrelated Defendants." (Id. at pp. 12-13) (citing George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007)).

19

Additionally, Magistrate Judge Mehalchick addressed Plaintiff's claim that "his claims conform to the Federal Rules" and the "chain of events through which he alleges that each set of claims are linked." (Doc. 61, p. 13). Magistrate Judge Mehalchick found that such an argument fails "on multiple fronts." (Id.). "First, to the extent that the chain of events Plaintiff describes is meant to establish that his claims arise out a 'series of transactions or occurrences,' he improperly relies on conclusory allegations of an ongoing retaliatory conspiracy to link 7 of his 10 sets of claims." (Id.). The Magistrate Judge found that "[t]hese allegations are wholly insufficient to satisfy the requirements of Rule 20." (Id.) (citing Washington v. Folino, 2013 U.S. Dist. LEXIS 39627, at *5, adopted by, 2013 U.S. Dist. LEXIS 34412 (W.D. Pa. 2013); Jackson v. Olsen, 2010 U.S. Dist. LEXIS 17879, at *7-8 (E.D. Va. 2010)). "Second," Magistrate Judge Mehalchick found that "Plaintiff fails to allege that his amended complaint contains a 'question of law or fact common to all [D]efendants.'" (Id.) (alterations in original) (quoting FED. R. CIV. P. 20(a)(2)(B)). Further, "[e]ven if his overarching retaliatory conspiracy allegations were properly supported with specific factual allegations, Plaintiff does not appear to assert that all 41 Defendant were involved in this conspiracy." (Id.).

Based on the foregoing, and "'[g]iven the hodgepodge of claims raised,' the

Court recommends that Plaintiff's amended complaint be dismissed without prejudice so that Plaintiff may file a second amended complaint that complies with the Federal Rules." (Doc. 61, p. 14) (citing Boresky v. Governor of New Jersey, 433 F. App'x 73, 77 (3d Cir. 2011)).  As a result, Magistrate Judge Mehalchick recommends that Plaintiff's "second amended complaint should be (1) limited in scope to only the specific claims that Plaintiff was allowed to proceed on or that were denied without prejudice in Plaintiff's initial complaint, and (2) arise out of the same transaction, occurrence, or series of transactions and occurrences while involving a question of law or fact common to all named Defendants." (Id.).

Defendant has not filed an objection to this portion of the Magistrate Judge's Report.  See (Doc. 62).  As a result, the foregoing will be reviewed for clear error.  The Court agrees with Magistrate Judge Mehalchick's reasoning concerning the determination that Plaintiff's amended complaint should be dismissed without prejudice for improper joinder and thus, finds no clear error on the face of the record.  As a result, the Court will adopt the Report's recommendation that Plaintiff's amended complaint be dismissed without prejudice for improper joinder.  The Court further adopts Magistrate Judge Mehalchick's recommendation that Plaintiff's "second amended complaint . . . be (1) limited in scope to only the specific claims that Plaintiff's initial complaint,

21

and (2) arise out of the same transaction, occurrence, or series of transactions and occurrences while involving a question of law or fact common to all named Defendants." (Doc. 61, p. 14).

### B.   Statute of Limitations

Magistrate Judge Mehalchick also addresses Defendants' argument that Plaintiff's claims are barred by the applicable statute of limitations. (Id.). After initially finding that Plaintiff's section 1983 and state law personal injury claims "are subject to a two-year statute of limitations," Magistrate Judge Mehalchick then discussed whether any of Plaintiff's claims in the amended complaint were untimely. (Id. at pp. 14-15). Magistrate Judge Mehalchick notes that "[a]lthough Defendants correctly point out that Plaintiff's January 5, 2015 amended complaint was filed over two years after most of the events that give rise to Plaintiff's claims, they do not address the significance of Plaintiff's initial complaint, filed on May 6, 2014." (Id. at p. 15). Federal Rule of Civil Procedure 15(c)(1)(B) states that "[a]n amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out–or attempted to be set out–in the original pleading . . . ." FED. R. CIV. P. 15(c)(1)(B). Magistrate Judge Mehalchick found that "Plaintiff's amended complaint sufficiently relates back to his initial pleading

for purposes of tolling the statute of limitations." (Doc. 61, p. 15) (citing <u>Brennan</u> <u>v. Kulick,</u> 407 F.3d 603, 607 (3d Cir. 2005)). "Accordingly," Magistrate Judge Mehalchick recommends that "Defendants' statute of limitations defense be denied with respect to all claims not derived from the first set of claims in Plaintiff's amended complaint." (<u>Id.</u>). Judge Mehalchick also recommends that "Defendants be permitted to reassert a statute of limitations defense with respect to any claims from the first set of claims in Plaintiff's amended complaint that he also chooses to assert in his second amended complaint." (<u>Id.</u>).

Since no objections have been filed as to the recommendations concerning Defendants' statute of limitations defense, those recommendations will be reviewed for clear error. Having reviewed the reasons presented by Magistrate Judge Mehalchick for her recommendation regarding Defendants' motion to dismiss Plaintiff's amended complaint under the applicable statute of limitations, the Court agrees with Magistrate Judge Mehalchick's reasoning and finds no clear error on the face of the record. As a result, the Court will adopt Magistrate Judge Mehalchick's recommendation that Defendants' statute of limitations defense be denied with respect to all claims not derived from the first set of claims in Plaintiff's amended complaint. The Court also determines that Magistrate Judge Mehalchick's recommendation that "Defendants be permitted to reassert a statute

23

of limitations defense with respect to any claim from the first set of claims in

Plaintiff's amended complaint that he also chooses to assert in his second amended

complaint," (Doc. 61, p. 15), is well reasoned and free of clear error.  Likewise,

that recommendation will be adopted.

    C.    <u>Administrative Exhaustion</u>

Defendants have also moved to dismiss "most of Plaintiff's claims" for the

"failure to exhaust administrative remedies." (<u>Id.</u> at p. 16).  Magistrate Judge

Mehalchick determined that "Plaintiff is far from clear as to how administrative

remedies were unavailable with respect to each particular claim." (<u>Id.</u> at p. 17).

Thus, "[g]iven the density and breadth of claims in Plaintiff's amended complaint

as is currently filed, the Court recommends that Defendants' affirmative defense of

nonexhaustion [be] denied without prejudice to their right to reassert this defense

pending the filing of Plaintiff's second amended complaint." (<u>Id.</u> at pp. 17-18).

Since no objections have been filed as to the recommendations concerning

Defendants' nonexhaustion defense, Magistrate Judge Mehalchick's

recommendation will be reviewed for clear error.  The Court agrees with

Magistrate Judge Mehalchick's analysis and recommendation regarding

Defendants' administrative exhaustion defense.  Thus, it is determined that

Magistrate Judge Mehalchick's well-reasoned recommendation that "Defendants'

affirmative defense of nonexhaustion [be] denied without prejudice to their right to reassert this defense pending the filing of Plaintiff's second amended complaint" is free of clear error. (Doc. 61, p. 18). Consequently, that recommendation will be adopted and thus, that portion of Defendants' motion to dismiss will be denied without prejudice.

        D.     <u>Additional Pleading Deficiencies</u>

           i.     <u>Law of the Case</u>

Magistrate Judge Mehalchick also notes that "Plaintiff should . . . be aware of numerous deficiencies in his amended complaint as it currently stands." (<u>Id.</u>). "First, Plaintiff asserts theories of liability that were dismissed from his initial complaint with prejudice." (<u>Id.</u>). According to Magistrate Judge Mehalchick, "[e]xamples of these previously dismissed claims include claims made against all individual Defendants in their official capacities, and Plaintiff's state law claim of civil conspiracy relating to the alleged retaliatory conspiracy to place Plaintiff in segregation after he wrote to OSII, as described in Plaintiff's fourth set of claims." (<u>Id.</u>) (internal citations omitted). Magistrate Judge Mehalchick determined that "Plaintiff is barred from reasserting these causes of action under the 'law of the case' doctrine, and they may not be raised in a prospective second amended complaint." (<u>Id.</u>) (citing <u>Arizona v. California</u>, 460 U.S. 605, 618 (1983)).

This portion of the Report and Recommendation has not been challenged, see (Doc. 62), thus it will be reviewed for clear error.  Having reviewed the reasons presented by Magistrate Judge Mehalchick for her recommendation that Plaintiff be barred from reasserting theories of liability that have already been dismissed with prejudice in this matter, the Court agrees with Magistrate Judge Mehalchick's reasoning and finds no clear error on the face of the record.  As a result, the Court will adopt Magistrate Judge Mehalchick's recommendation that Plaintiff is barred from reasserting these causes of action under the "law of the case" doctrine, (Doc. 61, p. 18), and thus, such claims may not be raised in a prospective second amended complaint.

## ii.     Prior Instructions From the Court

Among his numerous claims, Plaintiff alleges "supervisory liability claims against Defendants Wetzel, Lamas, Horton, Rackovan, Barnacle, Granlund, and others 'after nearly each distinct claim Plaintiff makes . . . .'"  (Id.) (quoting Doc. 47, p. 18 n.2).  Magistrate Judge Mehalchick notes that "[i]n denying Plaintiff's supervisory liability claims without prejudice, the District Court instructed that Plaintiff must identify specific facts to establish the supervisory Defendants' personal involvement."  (Id. at pp. 18-19) (citing Doc. 14, pp. 8-9).  Magistrate Judge Mehalchick states that:

26

> the Court cannot tell to what extent Plaintiff has cured the
> deficiencies from the supervisory liability claims in his initial
> complaint by alleging specific facts to support his allegations
> that supervisory Defendants either "established and maintained
> a policy, practice or custom which directly caused the
> constitutional harm" or "participated in violating plaintiff's ·
> rights, directed others to violate them, or, as the persons in
> charge, had knowledge of and acquiesced in their subordinates"
> violations.

(Doc. 61, p. 19) (quoting Santiago v. Warminster Twp., 629 F.3d 121 129 n.5 (3d

Cir. 2010)).  As noted by the Magistrate Judge, "Plaintiff regularly alleges that a

group of supervisory Defendants knew of a given constitutional harm, but fails to

allege specific facts as to how each specific supervisory Defendant individually

acquired this knowledge." (Id.).  Magistrate Judge Mehalchick continues by

stating that "[i]n the event that this Report and Recommendation is adopted by the

District Court, Plaintiff is advised that his second amended complaint must allege

specific facts to support an inference of actual knowledge on the part of each

supervisory Defendant with regard to each claim of supervisory liability." (Id.).

   As stated, this portion of the Report and Recommendation is not the subject

of Plaintiff's objection. See (Doc. 62).  Therefore, it will be reviewed for clear

error.  Having reviewed the reasons presented by Magistrate Judge Mehalchick for

her recommendation that Plaintiff be "advised" that his second amended complaint

must allege "specific facts to support an inference of actual knowledge on the part

of each supervisory Defendant with regard to each claim of supervisory liability,"
(Doc. 61, p. 19), the Court agrees with Magistrate Judge Mehalchick's reasoning
and finds no clear error on the face of the record. As a result, the Court will adopt
Magistrate Judge Mehalchick's recommendation that Plaintiff be advised that his
second amended complaint must allege specific facts to support an inference of
actual knowledge on the part of each supervisory Defendant with regard to each
claim of supervisory liability.

Magistrate Judge Mehalchick also states that "Plaintiff asserts no fewer than
17 counts of alleged violations of his Fourteenth Amendment right to equal
protection but fails to identify a single specific circumstances or similarly-situated
individual who was treated differently." (Id.) (citing Doc. 17, pp. 29, 31, 32, 33-
34, 35, 36, 37, 38, 39, 40, 41, 42). As noted by the Magistrate Judge, Plaintiff has
been warned in this matter "that repeated conclusory assertions that he was treated
differently from other inmates at SCI-Rockview with respect to each constitutional
violation he allegedly suffered are simply insufficient to state a claim for a
violation of one's Fourteenth Amendment right to equal protection." (Id.) (citing
Doc. 7, pp. 21-23; Doc. 14, pp. 7-9).

Magistrate Judge Mehalchick correctly states that "[a] district court is
justified in denying leave to amend upon '[a] plaintiff's "repeated failure to cure

28

deficiencies by amendments previously allowed . . . .""" (Doc. 61, p. 19) (quoting

Kitko v. Young, 575 F. App'x 21, 27 (3d Cir. 2014)).  Magistrate Judge

Mehalchick determined that "[g]iven that both the undersigned and the District

Court have warned Plaintiff about this particular deficiency, the Court does not

recommend granting Plaintiff leave to reassert equal protection claims in his

prospective second amended complaint." (Id.).

     As discussed above, Plaintiff filed a "motion for reconsideration" of the

Report and Recommendation, which is construed as his objection to that filing.

(Doc. 62).  That objection challenges the Magistrate Judge's recommendation that

Plaintiff be denied leave to amend his equal protection claims.  See (Id.).

However, instead of claiming that the Magistrate Judge made an error in the

Report and Recommendation, Plaintiff readily admits that "[t]he Magistrate Judge

was without question correct in her assessment of [Plaintiff's] less-than-adequate

Equal Protection claims." (Id. at p. 1).  Plaintiff then presents how he would

"overcome the deficiencies" of his equal protection claims.  (Id.).

     As noted by the Magistrate Judge, Plaintiff has been warned about his

"repeated conclusory assertions that he was treated differently from other inmates

at SCI-Rockview with respect to each constitutional violation he allegedly

suffered," and that such assertions "are simply insufficient to state a claim for a

29

violation of one's Fourteenth Amendment right to equal protection." (Doc. 61, p.

19) (citing Doc. 7, pp. 21-23; Doc. 14, pp. 7-9).  Further, the Magistrate Judge also

correctly finds that Plaintiff's equal protection claims, as presented in his amended

complaint, fail to state a claim upon which relief may be granted.  However,

although Plaintiff's equal protection claims fail to state a claim, and he has been

warned about this specific deficiency earlier in this matter, it is determined that,

out of an abundance of caution, Plaintiff will be given leave to reassert any equal

protection claims consistent with this Memorandum and Order in his second

amended complaint because it does not appear that granting such leave would be

futile.

## IV.  **CONCLUSION**

Based on the foregoing, Magistrate Judge Mehalchick's Report and

Recommendation will be adopted to the extent it recommends that Defendants'

motion to dismiss be granted in part and denied in part.  As a result, Defendants'

motion to dismiss will be granted to the extent it seeks to dismiss Plaintiff's

amended complaint for being in violation of Federal Rules of Civil Procedure 8

and 20.  As a result, Plaintiff's amended complaint will be dismissed without

prejudice.  Plaintiff will be given thirty (30) days from the date of this

Memorandum and accompanying Order to file a second amended complaint that

complies with Federal Rules of Civil Procedure, specifically Rules 8(d)(1) and

20(a).  To the extent that Defendants' motion to dismiss seeks to dismiss various

claims in Plaintiff's amended complaint on the grounds that they are time barred,

unexhausted, and for failure to state a claim for supervisory liability, those potions

of the motion will be denied without prejudice to Defendants' right to reassert

these defenses against Plaintiff's second amended complaint or any new complaint

that Plaintiff files as a result from this Memorandum and accompanying Order.

Finally, as for Plaintiff's claims alleging violations of his Fourteenth Amendment

right to equal protection, Plaintiff will be granted leave to reassert any Fourteenth

Amendment claims in his second amended complaint that are consistent with this

Memorandum.

     A separate Order will be issued.

**Date**: September 30, 2016            /s/ William J. Nealon_____
                                                **United States District Judge**